MULLETT'S ADMINISTRATRIX *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 121. Argued November 28, 1893. — Decided December 11, 1893.

The Supervising Architect of the Treasury is not entitled to extra compensation, above his salary, for planning and supervising the erection of a department building in Washington, occupied by other departments of the government.

In this case the delay in bringing suit leads to the conclusion that the architect recognized the work for which he sued as within the scope of his regular duties.

ON May 4, 1889, Alfred B. Mullett filed his petition in the Court of Claims, seeking to recover for services as an architect rendered in the year 1871, in preparing designs for the building now occupied by the State, War, and Navy Departments, and working drawings for the construction of the same. Other claims were stated in the petition, but they have since been

abandoned by the petitioner. On June 2, 1890, the Court of Claims made its findings of fact, as follows:

"I. The commission authorized by the resolution of December 14, 1869, and of which plaintiff, then Supervising Architect of the Treasury, was a member, decided to erect a building for the Department of State upon McPherson Square, in the city of Washington. It was suggested that plaintiff prepare plans for the building proposed, but he declined, and tentative plans were prepared by another. These plans were not satisfactory. Plaintiff thereupon, at the suggestion of the Assistant Secretary of State, prepared tentative plans for the building then intended to be erected upon McPherson Square for the Department of State only.

"Later it was decided to erect at the corner of Pennsylvania Avenue and Seventeenth Street, Washington, a building to accommodate the Departments of State, War, and Navy; and the McPherson Square site for the Department of State was abandoned. This course was authorized by the act of March 3, 1871, and prior to the passage of this act plaintiff was requested by the Secretary of State to extend his former design so it would cover the larger building then contemplated. This he did.

"II. After the passage of the act of March 3, 1871, 16 St. 494, c. 113, the commissioners therein named selected the plaintiff as architect to design and prepare the drawings for the building contemplated by that act. Plaintiff designed these drawings, superintended their preparation, made and suggested changes therein, and the drawings so designed by him were accepted and approved by the commissioners designated in the said act, and the building now occupied by the Departments of State, of War, and of the Navy was built in a substantial accordance with the drawings. Plaintiff superintended the construction of the southern wing of this building, now occupied by the Department of State, and the east wing from the beginning, until January 1, 1875, at which date the expenditures upon the building amounted to $3,876,096.47. The total cost of the entire building was $10,030,028.99.

"III. Plaintiff during all the time covered by the service

hereinbefore described was Supervising Architect of the Treas-ury Department. The labor performed by him as to the new building was done by permission of the Secretary of the Treasury, without sacrifice of time properly to be devoted to the duties of the supervising architect, and without promise of compensation, except as hereinafter shown. Plaintiff was not at personal expense or outlay in the preparation of plans or otherwise in connection with the new building, but he gave to it his individual genius and individual labor, and this without injury to the interests committed to his charge as supervising architect.

"IV. Plaintiff resigned his office as supervising architect of the Treasury. This resignation took effect January 1, 1875. He was requested by the Secretary of State to remain in charge of the new building at a salary of $5000 a year, giving to it his entire time and attention. This he declined.

"V. Prior to the passage of the act authorizing the con-struction of the building plaintiff was told at a meeting where were present the Secretary of State and representatives of the Committees on Public Buildings and Grounds of the Senate and House of Representatives, that if he would make the plans they had no doubt that his services would be taken into con-sideration by Congress in making the necessary appropriations for the erection of the building, and that if his plans were accepted and he should superintend the construction of the building that he would be properly compensated.

"VI. The building for the Departments of State, War, and of the Navy was begun June 21, 1871, and finished in 1888. It does not appear that prior to the commencement of this action plaintiff made a demand for compensation as architect or superintendent of said building, except in an application to Congress."

The opinion of the court was delivered by Davis, J., and is reported in 25 C. Cl. 409. From such judgment the petitioner appealed to this court. After taking the appeal he died, and the action was revived in the name of his administratrix.

*Mr. George S. Boutwell* for appellant.

*Mr. Assistant Attorney General Dodge* for appellees.   *Mr. Charles W. Russell* was on his brief.

MR. JUSTICE BREWER delivered the opinion of the court.

In addition to those that have been quoted above, there was a seventh finding with respect to the schedule of the charges of architects and the rules governing the same, but in the view we have taken of this case that is immaterial.   At the time the services sued for were rendered the plaintiff held the position of Supervising Architect of the Treasury, the salary of which, as fixed by Rev. Stat. § 235, was $5000 a year..   The nature and extent of his duties were not specifically defined by law..   But that they were of the character of those described in this case is implied from the title of "Supervising Architect."   It is not claimed that any new office was created. On the contrary, the averment in the petition is that he was employed "in his professional capacity as an architect."   In other words, that he rendered certain services not within the scope of his official duties as Supervising Architect of the Treasury.   It will also be perceived that no express promise of payment for these services was made by any officer or representative of the government, for the suggestion and request in respect to the preparation of plans spoken of in the first finding carried with it no mention of compensation.   Nor is there disclosed in the fifth finding any such promise.   An expression to the plaintiff on the part of persons representing the government of their belief that his services would be compensated, is very far from a promise to pay.   There is no pretence of any act of Congress authorizing payment, or in terms directing employment.   Reliance is placed not upon an express but an implied promise, and recovery is sought upon a *quantum meruit*.   Here we are confronted by these provisions of the Revised Statutes, which were in force at the time of these transactions:

"SEC. 1763.   No person who holds an office, the salary or annual compensation attached to which amounts to the sum of two thousand five hundred dollars, shall receive compensa-

tion for discharging the duties of any other office, unless expressly authorized by law.

"Sec. 1764. No allowance or compensation shall be made to any officer or clerk, by reason of the discharge of duties which belong to any other officer or clerk in the same or any other Department; and no allowance or compensation shall be made for any extra services whatever, which any officer or clerk may be required to perform, unless expressly authorized by law.

"Sec. 1765. No officer in any branch of' the public service, or any other person whose salary, pay, or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation."

Obviously, the purpose of Congress, as disclosed by these sections, was that every officer or regular employé of the government should be limited in his compensation to such salary or fees as were by law specifically attached to his office or employment. "Extras," which are such a fruitful subject of disputes in private contracts, were to be eliminated from the public service. Such purpose forbids a recovery in this case. Mr. Mullett as Supervising Architect of the Treasury was in the regular employ of the government at a stated salary of five thousand dollars. He was employed to render services which, if not strictly appertaining to his office or position, were of the same general character and to be performed at the same place. No new office was created; no express promise of payment was made; no act of Congress in terms gave authority to promise payment, or made any provision or appropriation for compensation. The case is one simply of a claim for compensation for extra services, when no express authority therefor can be found in any act of Congress.

These sections have been in force many years, and have received the consideration of this court in several cases: *Hoyt* v. *United States*, 10 How. 109; *Converse* v. *United States*,

21 How. 463; *United States* v. *Shoemaker*, 7 Wall. 338; *Stansbury* v. *United States*, 8 Wall. 33; *Hall* v. *United States*, 91. U. S. 559; *United States* v. *Brindle*, 110 U. S. 688; *United States* v. *Saunders*, 120 U. S. 126; *Badeau* v. *United States*, 130 U. S. 439, 451; and *United States* v. *King*, 147 U. S. 676, in which most of the former cases were reviewed, and in which it was held that a clerk of a Circuit Court is not entitled to compensation for services in selecting juries in connection with the jury commissioner, there being no statute expressly authorizing such compensation.

A still later case is that of *Gibson* v. *Peters*, decided at the present term, *ante*, 342, in which Gibson, a United States district attorney, claimed that, having the right to represent the receiver of a national bank in a suit brought by such receiver, he had rendered or offered to render such services, and was therefore entitled to payment for such services out of the funds in the hand of the receiver, and this by reason of the provision in the Revised Statutes, section 5238, that all expenses of any such receivership should be paid out of the assets of the bank before distribution. It was held that his compensation was fully prescribed by sections 823 to 827 of the Revised Statutes, and that he could not recover anything in addition for these services, notwithstanding the general language of section 5238.

The present case illustrates the propriety of such legislation as is found in these sections. Eighteen years after the services were rendered, fourteen years after he had left the employ of the government, the petitioner commences his action to recover compensation. No written contract for the services is shown; no legislation appears which directs that any services be called for, outside of those to be rendered by the officers and, employés of the government, or which recognizes that any extra services have been rendered, or provides any payment therefor. In the rapid changes which attend public life, many, if not most, of those who participated in the negotiations and arrangements which led up to the doing of this work by the petitioner, and who could doubtless have thrown light upon the matter, have passed away. Petitioner was in the employ

of the government, and employed for work of like character to that sued for. He was the one officer or employé to whom, when this work had to be done, attention would naturally have been directed. It would seem from his delay in bringing suit that he recognized this work as within the scope of his regular duties. At the most, it can only be regarded as extra service, cast upon him as an officer of the government and by reason of his official position, and, as such, there is no express provision of law for its compensation.

. The judgment of the Court of Claims is right, and it must be

*Affirmed.*