333 A.2d 420.

Martin S. Malinou *vs.* William E. Powers,
*Chairman et al.*

MARCH 14, 1975.

Present: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

Joslin, J. This action for a declaratory judgment was brought in the Superior Court by Martin Malinou as a citizen of this state and a delegate to its 1973 Constitutional Convention. He seeks a judgment declaring invalid those provisions of P. L. 1973, ch. 98, which purport to govern the convention's agenda and duration, and he also asks for reasonable compensation for services rendered both as a delegate to the convention and as an attorney in these proceedings. Named as defendants are the State of Rhode Island, its general officers, and the chairman of the convention. The plaintiff's principal contentions are, in substance, that the Legislature lacked authority to limit the convention's power to propose amendments to the constitution, that the limitations in issue, even if authorized, were not enacted in a manner permitted by *In re The Constitutional Convention*, 55 R. I. 56, 178 A. 433 (1935), and that his rights as a delegate and the convention's deliberations were thereby impermissibly "chilled."

The case was heard in the Superior Court while the convention was sitting. In a decision announced prior to the convention's adjournment, the trial justice refused the request for a declaratory judgment for these reasons: the plaintiff lacked standing, the defendants were immune from suit, and the questions presented were premature because the convention's actual conduct indicated its effective disregard of the allegedly chilling restrictions. Consequently, he concluded that the plaintiff, in effect, was seeking an advisory opinion which the Superior Court was powerless to grant. In addition, he held on estoppel and immunity

grounds that the plaintiff was not entitled to be paid for his services either as a delegate or as an attorney. The case is now here on the plaintiff's appeal.

The legislation in controversy authorized the Governor to call a special election between August 1 and August 10, 1973, to determine whether a constitutional convention should be convened to consider proposing amendments to the state's constitution in four specific areas.[1] That question was submitted to the people on August 7, 1973, and they voted to hold a convention for the "sole and limited purpose" of amending the constitution in the four areas permitted by the call legislation. In addition, they elected delegates, including plaintiff, to the convention thus authorized.

The call legislation also provided that the convention should conclude its business no later than October 4, 1973, that the delegates should receive no compensation for attending, and that those amendments receiving the convention's approval should be presented to the people at a special election to be called by the Governor between November 1 and November 15, 1973. Unlike the limitations placed on the convention's agenda, these latter provisions were neither required to be, nor were they in fact, submitted to the electorate.

Thereafter, pursuant to a proclamation issued by the

---

[1]Public Laws 1973, ch. 98, §1 provides in part:

"Shall a constitutional convention be held for the sole and limited purpose of amending the constitution of this state to provide:

1. For revision of the election laws; and

2. For repeal of the prohibition against lotteries; and

3. For removing the constitutional provision relating to the compensation of members of the general assembly and permitting said compensation to be determined by a seven (7) member commission to be appointed by the governor, provided that no member of the general assembly or any one directly or indirectly affiliated with the general assembly shall be appointed to said commission; and

4. For establishing of the functions of the grand jury in the judicial system."

Governor, the convention convened on September 4, 1973. During the sessions that followed, plaintiff and other delegates offered 91 proposals for altering the constitution, many of which went beyond the four areas opened to the convention by the General Assembly and the people. These proposals were referred to the various committees of the convention for review. Some were reported out of committee and considered by the full convention, while others, including some sponsored by plaintiff, were tabled. Subsequent to the trial court's decision, the convention adjourned *sine die* within the time limitation fixed by the call legislation. Prior thereto, however, it approved seven proposed amendments for submission to the people, and two of these—the proposals for changing the terms of office of the state's general officers and the manner of amending the state's constitution—went beyond the subject matter restrictions of the call legislation.

The primary question presented by this appeal is whether the legislative limitations on the agenda and duration of the 1973 Constitutional Convention were valid. The plaintiff argues that they impermissibly discouraged delegates from proposing, and the convention from considering, multiple amendments. He does not indicate, however, that any proposal of his or of any other delegate was ruled out of order, and he does not deny that the convention finally adopted two resolutions, and entertained many others, that exceeded those restrictions. Obviously the convention did not consider itself bound by the Legislature's agenda restrictions, and neither the people nor the Legislature now challenges its actions. Indeed, the people voted their acceptance of art. XLII of amendments to the constitution, an amendment clearly not contemplated by the legislative call.[2]

---

[2]Article XLII of amendments provides in part for (1) changes in the method of securing the approval of the electorate to constitutional amendments proposed by the General Assembly; and (2) for the calling of a convention at least once in each decade to consider amending or revising the constitution.

Accordingly, the question of the validity of the agenda restrictions is no longer "live." For this reason, and because plaintiff has failed to show that he has a legally cognizable interest in the outcome of this litigation, the issue of the agenda restrictions is moot. *Powell* v. *McCormack,* 395 U. S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491, 502 (1969).

The plaintiff further suggests, however, that the mootness of the issue raised is cured by the existence of his claim to compensation. He relies implicitly on *Powell* v. *McCormack, supra,* where the Supreme Court concluded that Congressman Powell's claim to back pay made justiciable the otherwise moot question of whether or not the Congressman was entitled to his seat during a term which by then had expired. In that case, however, the resolution of the "live" issue of Powell's right to compensation depended entirely on the answer to the moot question of his entitlement to his seat in the Congress. Here, unlike the *Powell* case, there is no interdependence of "live" and "moot" issues. The plaintiff's claim to compensation stands alone and cannot, therefore, resurrect the otherwise moot question presented.

The limit imposed by the Legislature on the convention's duration stands on another footing. When the convention met on September 20, 1973, a motion was made to adjourn on October 4, in accordance with the call legislation. In response, the chairman observed that the "* * * convention may at any time determine what will be its date of final adjournment * * *" and the delegates defeated the motion before them. *The Proceedings of the Rhode Island Constitutional Convention of 1973* at 70-72. Nonetheless, the convention voted on October 4, 1973, to adjourn *sine die,* on a motion seconded by plaintiff. *Id.* at 152. In light of the chairman's remarks and the defeat of the motion on September 20, it appears that the convention's final adjournment on October 4, was motivated less by the convention's

deference to the Legislature's restriction than by the consensus of the majority of delegates, including plaintiff, that their work was finished.

Even were we to assume, therefore, that plaintiff has standing to sue for a declaratory judgment and that defendants are amenable to suit—issues we need not and do not decide—the appeal would still fail. This is so because a prerequisite to the successful prosecution of a declaratory judgment action is an actual or justiciable controversy, and there is none here. *See Goodyear Loan Co.* v. *Little,* 107 R. I. 629, 269 A.2d 542 (1970); *Lamb* v. *Perry,* 101 R. I. 538, 225 A.2d 521 (1967).

The plaintiff also challenges the constitutional validity of the legislation providing that delegates should not be compensated for attendance upon the convention. That kind of legislation, he argues, discriminates between "the rich and unrich" and hence violates his rights under the due process and equal protection of law clauses of the Federal Constitution. The trial justice responded that plaintiff was estopped from pursuing his claim to compensation because he knew before he sought and accepted the office of a delegate that the Legislature had expressly prohibited compensation for delegates.

But even if we were to indulge plaintiff on the estoppel issue and were also to concede that defendants are amenable to suit—issues we do not reach here—his claim would fail. Recent cases hold that there is no constitutional right to receive compensation in any amount for public service. *Munoz* v. *San Diego,* 37 Cal. App.3d 1, 112 Cal. Rptr. 161 (1974). *See Warner* v. *Commonwealth,* 400 S.W.2d 209 (Ky. 1966), *cert. denied,* 385 U. S. 858, 87 S.Ct. 108, 17 L.Ed.2d 85 (1966). We agree with those cases because of the accepted rule that a public officer's right to compensation is not based on contract or property rights, *Dodge* v. *Board of Education,* 302 U. S. 74, 78-79, 58 S.Ct. 98, 100,

82 L.Ed. 57, 62 (1937), but depends instead entirely upon his being able "to show clear warrant of law" entitling him to remuneration for the performance of his public duties. *Realty Associates Sec. Corp.* v. *O'Connor*, 295 U. S. 295, 299, 55 S.Ct. 663, 665, 79 L.Ed. 1446, 1450 (1935); *People ex rel. Rand* v. *Craig*, 231 N. Y. 216, 221, 131 N.E. 894, 895-96 (1921); *Mullett's Adm'rx* v. *United States*, 150 U. S. 566, 570-71, 14 S.Ct. 190, 192, 37 L.Ed. 1184, 1186 (1893). If a public officer such as plaintiff is not entitled to be compensated for his service in the absence of some express provision therefor, it necessarily follows that there can be no recovery where, as here, the Legislature has specifically barred compensation.

Finally, there is plaintiff's claim to counsel fees for services rendered in these proceedings. Although reimbursement of that kind is not generally taxable as costs,[3] overriding considerations have sometimes persuaded American courts to fashion exceptions to that rule in equity proceedings, the most common being applied where a plaintiff has successfully maintained a class action of benefit both to himself and to the members of the class.[4] *Mills* v. *Electric Auto-Lite Co.*, 396 U. S. 375, 391-92, 90 S.Ct. 616, 625, 24 L.Ed.2d 593, 606 (1970); *Fleischmann Distilling Corp.* v.

---

[3] In *Waite* v. *Board of Review of Dep't of Employment Security*, 108 R. I. 177, 273 A.2d 670 (1971), we said that attorney's fees may not be taxed as part of the costs of litigation or otherwise. But that proceeding was an action of law, and the question of whether exceptions might exist in certain equity suits was not in issue.

[4] In *Mills* v. *Electric Auto-Lite Co.*, 396 U. S. 375, 392 n.16, 90 S.Ct. 616, 625, 24 L.Ed.2d 593, 606 (1970), the Court observes that "[m]any commentators have argued for a more thoroughgoing abandonment of the rule. See, *e.g.*, Ehrenzweig, Reimbursement of Counsel Fees and the Great Society, 54 Calif. L. Rev. 792 (1966); Kuenzel, The Attorney's Fee: Why Not a Cost of Litigation? 49 Iowa L. Rev. 75 (1963); McCormick, Counsel Fees and Other Expenses of Litigation as an Element of Damages, 15 Minn. L. Rev. 619 (1931); Stoebuck, Counsel Fees Included in Costs: A Logical Development, 38 U. Colo. L. Rev. 202 (1966); Note, *supra*, n.15."

*Maier Brewing Co.,* 386 U. S. 714, 718-19, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475, 478-79 (1967); *Sprague* v. *Ticonic Nat'l Bank,* 307 U. S. 161, 166, 59 S.Ct. 777, 780, 83 L.Ed. 1184, 1187 (1939). In this case plaintiff has failed to demonstrate how he qualifies under this or any other exception to the general rule. His claim to counsel fees therefore must be rejected.

The plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court for further proceedings.

*Martin Malinou,* pro se, appellant.

*Richard J. Israel,* Attorney General, *W. Slater Allen, Jr.,* Asst. Attorney General, for appellees.