### HOLLEY v. CITY OF MT. VERNON.

(Supreme Court, Appellate Division, Second Department.　December 30, 1910.)

1. WORDS AND PHRASES—"COMPENSATION."

"Compensation" is a recompense or reward for some loss, injury, or service, especially when it is given by statute.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 2, pp. 1352–1357.]

2. MUNICIPAL CORPORATIONS (§ 214*)—SEXTON'S CONTRACT—MUNICIPAL RESOLUTION.

A. resolution of a city council authorizing the board of health to employ a sexton to take charge of a designated public cemetery, the compensation not to exceed $25 a month until such time as the city could acquire title to the property, etc., did not authorize a contract employing plaintiff to care for the cemetery at $25 a month, and to appropriate the receipts for opening graves and to charge therefor $10 for adults and $5 for children, except paupers, whose graves he was required to make without other than his monthly compensation of $25.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 214.*]

3. MUNICIPAL CORPORATIONS (§ 214*)—EMPLOYMENT—CEMETERY OFFICERS—CONTRACT—RATIFICATION.

Where plaintiff was employed as sexton of a cemetery at $25 a month, and also authorized to retain fees for digging graves, under a resolution merely authorizing his employment at a salary not to exceed $25 a month, the payment of bills for his services for several years at $25 a month was not a ratification of such contract by the city; there being no evidence that the city was notified of the variance between the contract as made and the resolution of authority.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 214.*]

4. MUNICIPAL CORPORATIONS (§ 871*)—AUTHORITY—CEMETERY SEXTON—EMPLOYMENT.

Where a cemetery was not owned by a city and lay beyond its limits,. the city had no authority to employ a sexton therefor, under Const. art. 8,. § 10, providing that no county, city, town, or village shall give any money or property, or loan money or credit to or in aid of any individual, association, or corporation.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig.. § 1817; Dec. Dig. § 871.*]

Hirschberg, P. J., and Thomas, J., dissenting.

Appeal from Westchester County Court.

Action by Eugene M. Holley against the City of Mt. Vernon.　From a judgment for plaintiff and from an order denying defendant's motion for a new trial, it appeals.　Reversed, and new trial ordered.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR,. THOMAS, and CARR, JJ.

Frank A. Bennett, for appellant.

Sydney A. Syme, for respondent.

WOODWARD, J.　There is absolutely no legal or equitable reason why this plaintiff should recover in this action.　He claims to have been employed under a resolution of the common council of the de-

fendant in 1893 to "take charge and keep in order the public cemetery adjoining St. Paul's Cemetery at Eastchester at a compensation not to exceed $25 per month," and to have filled this position up to 1898, when he was called before the mayor to explain what he was being paid for, and that at this time some one told him to go on with the work but to withhold his bills, and that this unknown some one told him it would be all right, and that he then went on with the employment, without mentioning the matter to any one, for a period of 49 months, when he brought in a bill for the sum of $1,225. The defendant declined to pay the bill, and this action was brought; the jury having returned a verdict for the full amount of the claim.

Assuming for the purposes of this discussion that the city of Mt. Vernon owned the cemetery, and was charged with the duty of caring for the same, the employment alleged in the complaint is not the employment which the resolution of the common council directed, nor that which it may be deemed to have ratified. The resolution of the common council was that "the board of health of this city be, and they hereby are authorized, empowered and directed to employ on behalf of this city, a sexton to take charge and keep in order the public cemetery adjoining St. Paul's Cemetery at Eastchester at a compensation not to exceed twenty-five dollars per month until such time as this city can properly acquire title to said property and a sexton therefor is duly and legally employed." "Compensation" is defined as "a recompense or reward for some loss, injury, or service, especially when it is given by statute." 6 Am. & Eng. Ency. of Law, 369. When the common council of Mt. Vernon enacted that the board of health should be authorized to hire a man "at a compensation not to exceed twenty-five dollars per month," it necessarily excluded the idea of any other or further compensation for taking charge of "and keeping in order the public cemetery"; and yet the plaintiff's complaint alleges, and the testimony supports the allegation, that the contract made with the plaintiff by the health officer of the board of health was that:

"Prior to the 15th day of December, 1898, the plaintiff was engaged by the defendant through its duly authorized officers to act as city sexton at Mt. Vernon City Cemetery, at Eastchester, N. Y., at the compensation of $25 per month, and as compensation for his services in keeping the said city cemetery in order he was to be allowed the receipts for opening graves, being $10 for an adult and $5 for an infant or child. But that said plaintiff was only to charge for and retain the amount aforesaid for digging graves for such persons as should pay for the same, and was compelled to dig open and care for graves for all persons, and for the class designated and known as pauper graves he was to receive no other or greater compensation than the sum of $25 per month."

The record shows that, during the time that the plaintiff claims to have been employed under this alleged contract, he received many thousands of dollars for digging graves for persons who were able to pay for the same, and he received these sums because of the fact that he was in charge of the cemetery under this alleged employment.

It is not seriously questioned that the common council could not delegate the power to employ the plaintiff to the board of health, assuming that it was authorized to employ him at all, but the case was submitted to the jury on the theory that the defendant could ratify

the action of the board of health in hiring the defendant. The evidence shows that the health officer of the board of health, assuming to act under the authority of the resolution of the common council above quoted, entered into the contract alleged in the complaint with the plaintiff, and that he reported "having employed Eugene M. Holley as keeper of the cemetery at Eastchester," and that "on motion the health officer's action was approved." There is nothing here to show that the board of health ever had any notice that the contract gave to the plaintiff the authority to keep to his own use revenues which belonged to the cemetery organization, or to the employer of the plaintiff, and the only evidence attempted to be adduced in support of a ratification of the common council is found in the bills which were presented and paid by that body during the years from 1893 to 1898. These bills gave no notice of the contract entered into between the health officer and the plaintiff. They read:

"To services as city sexton from March 15th to April 15th, 1894, $25.00."

The only possible ratification, therefore, is the ratification of the employment of the plaintiff to "take charge and keep in order the public cemetery," while the contract actually made with the plaintiff was that he was to have $25 per month for digging pauper graves and keeping them in order, and whatever he could make out of other people who made use of this cemetery. In other words, the contract which was made was not to employ the plaintiff, as the common council directed, at a compensation not exceeding $25 for taking charge and keeping in order the cemetery, but was to pay to the plaintiff that sum for doing a part of the work, permitting him to exact $10 for adult graves and $5 for infant graves. This was clearly extra compensation, to which he was entitled only because of his employment and the authority assumed to have been given him by the health officer, and this contract does not appear ever to have been called to the attention of the board of health or of the common council. Clearly the contract made was neither authorized in the first instance nor ratified, and the effort of the plaintiff, after keeping quiet for a period of 49 months, during which it is not shown that any one in authority in the city of Mt. Vernon knew that he was pretending to do anything under this alleged employment, to exact the sum of $1,225 from the people, savors strongly of fraud, which ought not to be encouraged by any leniency on the part of the courts.

But there is a more fundamental difficulty with the plaintiff's cause of action, and that is that neither the pleadings nor the proofs show any authority on the part of the city of Mt. Vernon to employ a "sexton to take charge and keep in order the public cemetery adjoining St. Paul's Cemetery at Eastchester, * * * until such time as this city can properly acquire title to said property and a sexton therefor is duly and legally employed," for the very good reason that it appeared upon the face of this resolution that the city of Mt. Vernon did not own this cemetery, and the evidence clearly indicated that the title was in some one other than the defendant. The Constitution of this state (section 10, art. 8) provides that:

"No county, city, town or village shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation."

And, if the cemetery in question did not belong to the defendant, then it clearly had no authority under the Constitution to employ a city sexton to "take charge and keep in order the public cemetery" at Eastchester, at a compensation not exceeding $25 per month. That was giving to an individual, association, or corporation money or credit in aid of its own affairs, and it likewise further violated the same section of the Constitution, which further provides:

"Nor shall any such county, city, town or village be allowed to incur any indebtedness except for county, city, town or village purposes."

It may be conceded that the Legislature might provide that a municipal corporation should own and control a cemetery, and that if this was done a cemetery might be a city purpose; but that does not affect the question here presented, from the fact that the Legislature has not authorized the defendant to own and control a cemetery either within or without the limits of the city, and it clearly appears that the cemetery here in question does not belong to the municipality, nor is it within its jurisdiction. It might be that the municipality would have the authority to hire some one to dig a grave or graves for paupers at any point where it could procure the right of such interment, but this is not what the common council attempted to authorize; it directed the hiring of a "sexton to take charge and keep in order the public cemetery" at Eastchester, and this cemetery was used for the burial place of persons living anywhere in that locality for miles around. The contract was thus to take charge of and keep in order a public cemetery, the title to which was not in the city, and the location of which was outside of said city, and within the limits of another municipality. In its legal aspects, the authority might as well have been to take charge of and keep in order Greenwood Cemetery, and no one would contend that this was a "city purpose" for Mt. Vernon.

It was held in Riley v. City of Rochester, 9 N. Y. 64, that the city of Rochester, having the power by its charter "to purchase, hold and convey any estate, real or personal, for the public use of said corporation," was not thereby authorized to hold lands beyond its boundaries to be used as a highway, and we are of the opinion that the authority found in the charter of the city of Mt. Vernon "to purchase, hold, sell, convey and agree to purchase and convey real estate, whenever necessary or expedient for the accomplishment or execution of any of the purposes or powers or duties mentioned in this act" does not operate to give authority to own a cemetery outside of the limits of the city, where there is no mention of such a purpose or power or duty in the act. It is possible, as suggested by Dillon on Municipal Corporations, § 565, that the power might be implied to hold land for cemetery purposes outside of the limits of a city if the city itself was authorized to own a cemetery; but, where there is no authority in the charter for a municipal cemetery, I think it would be carrying implied powers a long way to hold that the municipality might own the cemetery in question. But that is not necessary to be decided here,

for it appears affirmatively that the city did not own the premises at the time of making the alleged contract with the plaintiff, and nothing appears to show that it has since been acquired, so that the case as it is here presented is whether the city of Mt. Vernon had the power to contract for a sexton for a cemetery outside of its own limits, and owned and controlled by some other corporation or individual.

The judgment and order appealed from should be reversed, and a new trial ordered; costs to abide the event.

BURR and CARR, JJ., concur.    HIRSCHBERG, P. J., and THOMAS, J., dissent.