**Michael A. BERGER, d/b/a Newport School of Hairdressing**

v.

**RHODE ISLAND BOARD OF GOVERNORS FOR HIGHER EDUCATION.**

Civ. A. No. 92–0566/L.

United States District Court, D. Rhode Island.

Oct. 1, 1993.

Michael DiBiase, Blish & Cavanagh, Providence, RI, for plaintiff.

Nicholas Trott Long, Office of Higher Educ., Providence, RI, for defendant.

## *MEMORANDUM AND ORDER*

LAGUEUX, Chief Judge.

This matter is presently before the court on cross motions for summary judgment pur-

suant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Michael Berger brought this action primarily seeking declaratory and injunctive relief against the defendant Rhode Island Board of Governors for Higher Education ("The Board"). Plaintiff seeks a pronouncement from the Court that the Board's Standard 7.2 of the Regulations Governing Proprietary Schools in Rhode Island ("Standard 7.2") establishing a screening system for school advertising is unconstitutional under the First and Fourteenth Amendments to the United States Constitution as well as Article I, Section 20 of the Rhode Island Constitution. Plaintiff also seeks an injunction which would prohibit the Board from enforcing Standard 7.2. Although plaintiff sought damages for violation of his civil rights under 42 U.S.C. § 1983 in the Complaint, that remedy has not been pursued.

## BACKGROUND

Plaintiff owns and operates the Newport School of Hairdressing, a proprietary school licensed and supervised by the Board as authorized by R.I.Gen.Laws § 16–40–1 *et seq.* and § 16–59–4.

The Newport School offers a certificate program which requires extensive training in hairdressing and cosmetology. As part of this training program, the students practice on live subjects. Because the students need practice on a diverse selection of hair types, the School seeks live non-student subjects upon whom the students practice under instructor supervision. In order to reach potential new students and subjects for student practice, the Newport School has advertised or attempted to advertise in newspapers and on television.

Standard 7.2 requires that all advertising by a proprietary school be approved prior to publication by the Board[1]. The officer of the Board in charge of this process has been Mr. David Souza. Between 1988 and 1991,

---

1. The questioned regulation states, "All advertising material must be approved prior to being used. The Office of Higher Education will have two working days to review the advertising material and to accept or reject the use of these materials. If not rejected within the given two day period, the advertising materials may be used." Regulations Governing Proprietary Schools in Rhode Island § 7.2. Standards 7.1 *et seq.* are contained in an appendix at the end of this opinion.

the School had several of its advertisements rejected by Souza. Some advertisements were submitted by the School prior to their publication, while others were first seen by Souza in the newspaper. Advertisements were rejected for a variety of reasons including clarity, grammar and punctuation problems. Some were rejected solely because prior approval had not been granted by Souza. At least one other was rejected because it was addressed to practice subjects rather than potential students.

Plaintiff brought this action on October 21, 1992. Thereafter, each party filed a motion for summary judgment. The hearing on the cross motions was held on July 1, 1993. Plaintiff argued 1) that the standards promulgated by the Board constitute a prior restraint on protected First Amendment activities; 2) that the prior approval requirement of Standard 7.2 is overbroad because regulation of proprietary school advertising can be accomplished with a much narrower regulatory scheme; and 3) that Standard 7.2 is unconstitutional as applied by the Board.

Defendant Board responded by arguing that given the nature of the advertising, the government's compelling interest in curtailing misleading advertising overcomes any limited constitutional protection afforded advertising.

The matter was then taken under advisement. It is now in order for decision.

### DISCUSSION

#### A. Standard of Review

The standard for ruling on summary judgment motions is set forth in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Further, the court must view the facts and all inferences therefrom in the light most favorable to the nonmoving party. *Continental Casualty Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). Thus, each party's motion for summary judgment must be addressed by examining the facts and inferences in favor of the other party.

The Court will base its ruling on the face of Standard 7.2. Therefore, there are no facts in dispute. The Court determines that Standard 7.2 is unconstitutional and thus, decides that plaintiff as the moving party is "entitled to a judgment as a matter of law."

#### B. Prior Restraint

The First Amendment commands that "Congress shall make no law ... abridging the freedom of speech, or of the press...." U.S. Const. amend. I. This proscription has long been held to be applicable to the states through the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652, 666, 45 S.Ct. 625, 629, 69 L.Ed. 1138 (1925); *Near v. Minnesota*, 283 U.S. 697, 707, 51 S.Ct. 625, 627, 75 L.Ed. 1357 (1931). Plaintiff's claim is primarily that Standard 7.2 constitutes an unlawful prior restraint on expression protected by the First and Fourteenth Amendments. Commercial speech unquestionably falls within the protective ambit of the First Amendment, but the extent of that safe haven is not always clear. *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 637, 105 S.Ct. 2265, 2274, 85 L.Ed.2d 652 (1985) ("More subject to doubt, perhaps, are the precise bounds of the category of expression that may be termed commercial speech, but it is clear enough that the speech at issue—advertising pure and simple—falls within those bounds"); *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 64–5, 103 S.Ct. 2875, 2878–79, 77 L.Ed.2d 469 (1983). It is to be noted that it is unclear whether the doctrine of "prior restraint" even applies to commercial speech. *State Bd. of Virginia Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771–772, n. 24, 96 S.Ct. 1817, 1830–31, n. 24, 48 L.Ed.2d 346 (1976); *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n*, 447 U.S. 557, 571 n. 13, 100 S.Ct. 2343, 2354 n. 13, 65 L.Ed.2d 341 (1980). The Court will not dwell on this point because it is not necessary to the outcome of this case.

Before a court examines whether a regulation is a prior restraint, it must examine the regulation and determine if the restriction violates the First Amendment regardless of the timing of the sanction. Laurence Tribe, *American Constitutional Law* § 12–34 (1988). *See e.g. Secretary of State of Maryland v. J.H. Munson Co.,* 467 U.S. 947, 968–69, 104 S.Ct. 2839, 2853, 81 L.Ed.2d 786 (1984). When a restriction on speech would violate the First Amendment regardless of when enforced, it is misleading to apply the prior restraint doctrine. "The doctrine [of prior restraint] deals with limitations of form rather than of substance." Thomas Emerson, *The Doctrine of Prior Restraint,* 20 Law & Contemp.Probs. 648, 648 (1955). *See* John Jeffries, *Rethinking Prior Restraint,* 92 Yale L.J. 409, 410–11 (1983). *See also, Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 598, 96 S.Ct. 2791, 2821, 49 L.Ed.2d 683 (1976) (Brennan, J., concurring in the judgment) ("any immunity from punishment subsequent to publication of given materials applies *a fortiori* to immunity from suppression of that material before publication"). Therefore, this Court must first examine the substance of the Board's restrictions on proprietary school advertising. If those restrictions constitute an impermissible constraint on expression, the prior restraint argument need not be addressed.

## C. Restriction of Commercial Speech

As noted above, commercial speech is protected by the First Amendment. It is valued because it aids the speaker in his economic endeavors and also assists consumers in making an informed choice. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York,* 447 U.S. 557, 561–62, 100 S.Ct. 2343, 2348–49, 65 L.Ed.2d 341. The protection afforded to speech that merely proposes a commercial transaction is a limited one in application, however. *Posadas de Puerto Rico Assoc. v. Tourism Co. of Puerto Rico,* 478 U.S. 328, 340, 106 S.Ct. 2968, 2976, 92 L.Ed.2d 266 (1986). In *Central Hudson,* the Supreme Court announced a test to determine if a governmental restriction on particular commercial speech is permissible. First, the commercial speech must concern lawful activity and not be misleading

or fraudulent. Second, the government's interest in restricting the speech must be substantial. Third, the regulation must "directly advance that government interest". Fourth, the restriction must not be more extensive than necessary to serve that interest. 447 U.S. 557, 566, 100 S.Ct. 2343, 2351.

Plaintiff, in the operation of the School, is conducting activities that are lawful in the State of Rhode Island. His advertising concerns lawful activities of the School: recruiting students and seeking subjects for student practice. Furthermore, the Board has made no allegation that the plaintiff's practice of advertising for these two activities is either fraudulent or misleading in general.

The Board attempts to support Standard 7.2 on broader grounds. The Board desires to protect potential students from the hazards of unscrupulous school operators promising that "a lucrative and/or glamorous career will automatically follow from enrollment in a particular proprietary school". Defendant's Memorandum p. 5. The Board also asserts that it has a duty to carefully regulate the recruiting of proprietary schools given the substantial amount of public funds that flow to them each year. *Id.* at 6. These interests are clearly substantial.

The Board's regulations directly advance the interest of prohibiting unscrupulous recruiting. Standard 7.2 requires that all advertising be approved by the Board prior to publication. This procedure is certainly an effective method of screening out any advertisement that would unfairly attract students to the School.

However, Standard 7.2 runs afoul of the final segment of the *Central Hudson* test which requires that the restriction be no more extensive than necessary to further the state's interest. Standard 7.2 mandates that any and all advertisements be approved by the Board regardless of their aim or purpose. As written, this restriction not only requires approval of advertisements seeking new students or hairdressing subjects, but also requires pre-publication approval of all advertising—even an ad for a clerical job at the School or one to sell old office equipment. Furthermore, the standards as a whole fail to

give the reviewing authority any guidance as to what criteria are to be used in determining whether a submitted advertisement passes muster. The lack of reviewing criteria coupled with the unlimited breadth of the Board's authority is clearly not narrowly tailored to the government's asserted interest.

Since the restriction is not narrowly restricted to the Board's interest in regulating proprietary school advertising, this Court cannot approve of the suppression of the plaintiff's legitimate rights to advertise as protected by the First and Fourteenth Amendments. 447 U.S. 557, 569–71, 100 S.Ct. 2343, 2353–54, 65 L.Ed.2d 341.

*D. Vagueness*

■ Although the traditional doctrine of overbreadth does not extend to commercial speech, a regulation will be found unconstitutionally vague if it contains an overbroad delegation of discretionary power to an executive licensor. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 496–98, 102 S.Ct. 1186, 1192–93, 71 L.Ed.2d 362 (1982). The standard for testing vagueness was established by the Supreme Court in *Grayned v. City of Rockford,* 408 U.S. 104, 108–9, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972):

> "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications" (footnotes omitted).

■ The amount of protection under the vagueness approach varies with the speech affected and the type of penalty imposed by the restriction. The Supreme Court has held that the vagueness analysis should be less rigid in the commercial area. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193 ("[E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action.") (footnotes omitted). Similarly, that Court has noted that civil penalties restricting speech may be given greater tolerance than criminal sanctions. *See Id.* at 498–99, 102 S.Ct. at 1193; *Winters v. New York,* 333 U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed. 840 (1948). The regulation at issue in the present case falls into both of the categories that the Supreme Court has identified as deserving greater latitude in scrutiny. This more liberal review, however, does not eliminate the applicability of the vagueness doctrine to Standard 7.2. The regulation suffers from two defects. First, it grants unlimited control over advertising. As noted above, the standard is boundless in that it grants review authority over every advertisement promulgated by a proprietary school, regardless of subject matter or intended audience. Second, the standards contain no guidelines or definite requirements to limit the reviewing officer or direct his scrutiny of submitted advertisements. This is the ultimate in unfettered discretion residing in an executive official. *See e.g. Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150–53, 89 S.Ct. 935, 938–40, 22 L.Ed.2d 162 (1969) (striking a parade permit law); *Staub v. City of Baxley,* 355 U.S. 313, 321–25, 78 S.Ct. 277, 281–84, 2 L.Ed.2d 302 (1958) (striking a law requiring license for union solicitation); *Kunz v. New York,* 340 U.S. 290, 293, 71 S.Ct. 312, 314, 95 L.Ed. 280 (1951) (striking an ordinance requiring a license for public religious service). *See also Fratiello v. Mancuso,* 653 F.Supp. 775, 788–90 (D.R.I.1987). Even given the less strict vagueness analysis which applies in this situation, Standard 7.2 cannot withstand constitutional challenge.

This is not to say that the State of Rhode Island cannot regulate advertising by a proprietary school. The government's interest in protecting public funds and potential stu-

dents from unscrupulous schools is great; but any suppression of speech must comport with the First and Fourteenth Amendments.

For the reasons stated above, Standard 7.2 of the Regulations Governing Proprietary Schools in Rhode Island is hereby declared unconstitutional on its face. Because standard 7.2 is unconstitutional in substance, this court need not address whether its restrictions constitute an unconstitutional prior restraint. Likewise, it is unnecessary to determine whether the advertising standards are unconstitutional as applied. In short, plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied.

### E. Relief

The Court hereby declares that Standard 7.2 is unconstitutional on its face as a violation of the First and Fourteenth Amendments to the United States Constitution. Defendant is hereby enjoined from applying Standard 7.2 in any way, form, shape or manner. The Complaint contains a prayer for damages, but plaintiff has made no showing that he has suffered monetary loss resulting from the application of Standard 7.2 to his proposed advertisements in the past. Therefore, plaintiff's claim for compensatory and exemplary damages is denied.

### F. Costs and Counsel Fees

■ Plaintiff is also entitled to costs and an award of counsel fees under 42 U.S.C. § 1988. Any motion for such costs including counsel fees shall be made within thirty (30) days of this decision. The motion must be supported by a memorandum and the application for counsel fees must be supported by a detailed, contemporaneous accounting of the time spent by the attorneys on this case. *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 952 (1st Cir.1984). Defendant will have thirty (30) days thereafter to object with a memorandum in support. After said filings, the Court will set the matter down for hearing to determine the amount of costs and counsel fees to be awarded and included in the judgment. No judgment shall enter until those issues are resolved.

It is so ordered.

### APPENDIX

*Standard 7; Advertising*

7.1. All advertising material seeking prospective students must be clear, accurate, supportable and include no misleading information.

7.2. All advertising material must be approved prior to be used. The Office of Higher Education will have two working days to review the advertising material and to accept or reject the use of these materials. If not rejected within the given two day period, the advertising materials may be used.

7.3. The fact of approval may not be used in advertising material or letterheads except in the following manner: "meet the legal requirements to operate as a school in the State of Rhode Island" or "approved by the Rhode Island Board of Governors for Higher Education."

7.4. No photograph, cut, engraving, or illustration may be used in the catalogue or advertising material in such a manner as to convey a false impression of a school's size, importance, location, equipment or facilities.

7.5. Letters of endorsement, commendation, or recommendation may be used in the catalogues and advertising material provided prior consent is obtained from the author and no fee is paid for either the consent or use of the endorsement. Such letters must be kept on file, subject to inspection. Testimonial letters may be used only when they are strictly factual and portray current conditions.

7.6. Classified advertisements seeking prospective students must appear under "instruction," "education," "training," or a similar classification and must not be published under any "help wanted" or "employment" classified or through blind advertisement.

7.7. All advertising material, including but not limited to direct mail, radio, television, or directories seeking prospective students, must clearly indicate that training is being offered.

7.8. All advertising material (as referenced in Standard 7.7) must not, either

by actual statement, omission, or intimation, imply that employment is being offered to prospective students. The words "wanted," "help wanted," or the word "trainee," may not be used, either in the headline or the narrative to indicate that the school has, knows of, or is offering students possible jobs or employment.

7.9. No statement or representation may be made that students will be guaranteed employment while enrolled in the school or that employment will be guaranteed for students after graduation, nor shall opportunities for employment upon completion of any program be falsely represented.

7.10. No dollar amount may be quoted in any advertising material as representative or indicative of the earning potential of graduates.

7.11. If placement statistics are used in any advertising material, the school must be able to substantiate the statistics with school records. These records must be made available on request to the Office of Higher Education staff.

7.12. If a placement service is advertised, adequate records must be maintained by schools advertising such placement services that will reflect employment data.

7.13. A school may not advertise as an employment agency or other type of agency under the same name or a confusingly similar name, or use the same telephone number. No representative may solicit students for a school through an employment agency.

7.14. No statement may be made that the school or its programs have been "accredited" unless the accreditation is that of the appropriate nationally recognized accrediting agency listed by U.S. Department of Education; further, clear distinction must be made between candidate status and full accreditation.

7.15. Deceptive statements must not be made concerning other proprietary schools.

7.16. The Commissioner of Higher Education, at any time, may require that a school furnish proof of any of its advertising claims. If acceptable proof cannot be furnished, a retraction of the claim promulgated in the same manner as the original claim must be published by the school. Continuation of misleading advertising shall constitute cause for suspension or revocation of approval.