David E. **PERRY**, Michael Kelleher, Lucille A. Sasso, Joyce C. Dube, William Aliferakis, William T. Laferriere, Gerald J. Griffin, Doreen R. Bowen, John J. Martino, Joseph Conley, Marguerite Dipalma, Cheryl Witt, Susan Ryan Froment, Barbara Brooks, F. Charles Haigh, Dennis Revens, Kenneth Haupt, and Arlene Maloney, Plaintiffs,

v.

**STATE OF RHODE ISLAND**, Lincoln Almond, in his Capacity as Chief Executive Officer of The State of Rhode Island, Nancy Mayer, in her Capacity as Treasurer of the State of Rhode Island, Jeffrey Pine, in his Capacity as Attorney

General for the State of Rhode Island, Gayl W. Doster, in his Capacity as Director of the Department of Administration, Jane Doe, Alias, and John Doe, Alias, in their Capacities as Members of the Unclassified Pay Plan Board, Defendants,

RHODE ISLAND LABORERS' DISTRICT COUNCIL, Laborers' Local Union 808 Judicial and Technical Employees, Ronald M. Coia, Frank Ciccone, Anthony Piccirilli, Mark Benjamin, Erin Burn, Brian Burn, Deborah Buisclair, Michael Cafferty, Beverly `Clerk, Carol Costa, Lois Karlafarski, Paula Larivee, Phyllis Lynch, Jean Maggiacomo, Joseph Maggiacomo, Linda Piccirilli, Claudia Porrazzo, and Dennis Sao Bento, Plaintiffs,

v.

STATE OF RHODE ISLAND, Lincoln Almond, in his capacity as Chief Executive Officer of the State of Rhode Island, Nancy Mayer, in her Capacity as Treasurer of the State of Rhode Island, Jeffrey Pine, in his Capacity as Attorney General for the State of Rhode Island, Robert J. Carl, Jr. in his Capacity as Director of the Department of Administration, Robert Harrall, in his capacity as Chief Administrator of the Supreme Court of Rhode Island, Defendants.

C.A. Nos. 95–336B, 96–052B.

United States District Court,
D. Rhode Island.

July 24, 1997.

Amato A. DeLuca, Miriam Weizenbaum, DeLuca & Weizenbaum, Ltd., Providence, RI, for Plaintiffs in C.A.95-336B.

Rebecca Tedford Partington, Thomas A. Palombo, James R. Lee, Atty. Gen. Office, Providence, RI, Harris K, Weiner, Office of the Governor, Joseph S. Larisa, Jr., Office of the Governor, Executive Counsel, Providence, RI, for Defendants in C.A. 95-336B.

Michael S. Bearse, Providence, RI, Richard A. Fairbrothers, Laborers' Int. Union of North Amer., for Plaintiffs in C.A. 96-052B.

Rebecca Tedford Partington, Thomas A. Palombo, James R. Lee, Atty. Gens. Office, Providence, RI, Harris K. Weiner, Office of the Governor, Providence, RI, for Defendants in C.A. 96-052B.

## *OPINION*

FRANCIS J. BOYLE, Senior District Judge.

Both of these actions are before the Court on cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

In Civil Action No. 95–336B, the plaintiffs ("Perry plaintiffs") are court clerks employed by the State of Rhode Island. They challenge the constitutionality of the 1994 amendments to the Rhode Island Court Clerks' Incentive Pay statute, R.I.Gen.Laws §§ 8–4.1–1 to –7. The Perry plaintiffs seek declaratory, compensatory and injunctive relief. Defendants assert that the amendments are constitutional on their faces and as applied.

In the second action, Civil Action No. 96–052B, the plaintiffs ("Rhode Island Laborers plaintiffs") are labor organizations, elected representatives of those labor organizations, and court clerks employed by the State of Rhode Island. The Rhode Island Laborers plaintiffs allege that the Rhode Island General Assembly's 1994 amendments to the Court Clerks' Incentive Pay statute violate the

United States and Rhode Island Constitutions and the collective bargaining agreement between the parties. They seek declaratory and injunctive relief and money damages. The defendants assert that the amendments are constitutional on their faces and as applied.

■ The Rhode Island Laborers plaintiffs also assert a fourth cause of action in their complaint. They request a declaratory judgment regarding whether the Court Clerks' Incentive Pay statute is subordinate to the Rhode Island Public Bargaining Law, R.I.Gen.Laws §§ 28–7–1 to –48. Because the Rhode Island Laborers plaintiffs did not brief this issue in their Memorandum of Law or argue this issue before the court, it will not be addressed in this opinion. Furthermore, the issue is moot, since the terms of the amended Court Clerks' Incentive Pay statute indicate that the amended plan did not become effective until after the expiration of any collective bargaining agreements. *See* R.I.Gen.Laws §§ 8–4.1–7.

For the following reasons, both plaintiffs' motions for summary judgment are denied, and both defendants' motions for summary judgment are granted.

## I.  Background

### A.  The Perry Matter

In 1976, the Rhode Island General Assembly adopted Public Laws Chapter 205, Section 1, which created a Court Clerks' Incentive Pay Plan. The plan provided for incentive steps for clerks of the various Rhode Island state courts who "further[ed] their education in the field of court administration or law enforcement." 1976 R.I. Pub. Laws c. 205, § 1. A percentage increase over base salary was awarded to clerks who achieved either an Associate degree or a Baccalaureate degree. Credit was given only for a degree in administration of justice or law enforcement, or a Baccalaureate degree acceptable for admission to a law school accredited by the American Bar Association. In addition, any clerk who earned a Masters degree in public administration was paid a monetary sum in addition

to basic salary and any other credit to which he or she was entitled.

Many clerks took advantage of the incentive pay plan. For some, the plan required not only the pursuit of a degree but also the expenditure of time and money which could have been otherwise used. Some of the clerks made serious financial commitments based upon the terms of the plan, including obtaining bank loans and mortgages to pay for their education.

In 1994, the General Assembly adopted Public Laws Chapter 125, Sections 1 and 2, which changed the benefits under the Court Clerks' Incentive Pay Plan from a percentage of base salary to a sum certain. The effect of the amendment was to reduce the amount of money each eligible clerk received . under the plan. The amendment also made the incentive program applicable only to clerks who held their positions on the effective date of the act, and not to persons hired as clerks after the effective date of the act. The act specified that it would not take effect until the expiration of any collective bargaining agreement in existence on the effective date of the act.

The Perry plaintiffs fall into three categories. First, there are those plaintiffs who accepted employment before the incentives were established and who already held degrees when the incentives were established. Second, there are other plaintiffs who accepted employment before the incentives were established and who received degrees after the incentives were established. Third, there are other plaintiffs who accepted employment after the incentives were established and who thereafter earned their degrees.

The Perry plaintiffs and defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court referred the motions to a Magistrate Judge for a Report and Recommendation. The Magistrate Judge issued his Report and Recommendation on July 16, 1996, recommending that the defendant's motion for summary judgment be granted on all counts. On September 24, 1996, this Court heard the Perry plaintiffs' objection to the Magistrate's Report and Recommendation. On December

16, 1996, a hearing was held on the parties' cross-motions for summary judgment.

## B. The Rhode Island Laborers Matter

The factual background is essentially the same as that in the Perry matter, the primary difference being that the Rhode Island Laborers plaintiffs were covered by a collective bargaining agreement between Rhode Island Laborers' District Council and the State of Rhode Island. The matter began in state court. The Rhode Island Laborers plaintiffs filed an action in Rhode Island Superior Court on June 29, 1995, seeking declaratory and injunctive relief and a writ of mandamus for injunctive relief This complaint was withdrawn on September 6, 1995. On September 29, 1995, plaintiffs filed a motion to intervene and complaint for intervention in the Perry plaintiffs' federal action described above, Civil Action No. 95–336B. On November 29, 1995, the motion to intervene was denied without prejudice. The Rhode Island Laborers plaintiffs subsequently filed the complaint in this action, docketed as Civil Action No. 96–052B, in January, 1996.

The Rhode Island Laborers plaintiffs are court clerks within the state judiciary who are also union members of Rhode Island Laborers' District Council—Local 808. As of July 1, 1992, the Rhode Island Laborers' District Council—Local 808 entered into a collective bargaining contract with the State of Rhode Island and negotiated the provisions of their collective bargaining agreement, including a provision covering educational leave. Article XVII of the collective bargaining agreement establishes an incentive pay program in accord with the provisions of the Court Clerks' Incentive Pay statute. The incentive steps provide for percentage increases which are identical to those enunciated in the plan: a 10% increase above basic salary for an associates degree and a 16% increase for a baccalaureates degree. The primary difference between the agreement and the incentive pay plan is the amount paid to clerks who earned advanced degrees. Under Section 8–4.1–6 of the plan, clerks who earned masters in public administration degrees earned an additional $750.00, while under Article XVII § 17.5 of the collective bargaining agreement, clerks who earned one of a number of advanced degrees were paid the more generous sum of $1,200.00.

The sixteen individual plaintiffs received educational incentive pay under the Court Clerks' Incentive Pay statute and their collective bargaining agreement with the state until June 30, 1995, the date on which their collective bargaining agreement expired.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

A motion for summary judgment requires the court to determine if there is any genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The court must view all facts and related inferences in the light most favorable to the nonmoving party. *Continental Casualty Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370, 373 (1st Cir.1991). Therefore, "each party's motion for summary judgment must be addressed by examining the facts and inferences in favor of the other party." *Berger v. R.I. Bd. of Governors for Higher Educ.,* 832 F.Supp. 515, 517 (D.R.I. 1993).

## III. Analysis

### A. The Contract Clause

In both matters, the plaintiffs' first arguments are pressed under the Contracts Clause of the U.S. Constitution. U.S. Const. art. I, § 10. The Perry plaintiffs contend that the Rhode Island General Assembly entered into a contract with plaintiffs when it offered them compensation in exchange for

service pursuant to the incentive pay plan. The Rhode Island Laborers plaintiffs assert that the plan demonstrates a legislative intent to create an express contractual agreement between the parties. They also assert, in the alternative, that their collective bargaining agreement together with the language used in the plan, create an implied contract between the parties. Both groups of plaintiffs claim that the amendment of the plan impairs their contractual rights. In both matters, defendants assert that the statute does not create a contract.

The Contract Clause reads: "No state shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. Originally, the Contract Clause was intended to protect private contracts. *See* Laurence H. Tribe, American Constitutional Law § 9–8, at 613 (2d ed. 1988). The Clause has been applied frequently, however, to contracts between states and private parties. *McGrath v. Rhode Island Retirement Board,* 88 F.3d 12, 16 (1st Cir.1996) (citing *Fletcher v. Peck,* 10 U.S. (6 Cranch.) 87, 3 L.Ed. 162 (1810)). This matter involves so-called 'public' contracts, or contracts to which the state or its agent is a party. *See National Education Association–Rhode Island, et al. v. Retirement Board of the Rhode Island Employees' Retirement System, et al.,* 890 F.Supp. 1143, 1151 (1995) ("NEA–RI").

■ A court must perform a three-part analysis in examining alleged impairments of contracts. *McGrath,* 88 F.3d at 16 (citing *General Motors Corp. v. Romein,* 503 U.S. 181, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992)). First, a court must determine if a contract exists. If so, the court must enquire whether the law in question impairs an obligation under the contract. If a contractual right has been impaired, the court must determine whether the impairment is substantial. If the impairment is substantial, the three-part test expands to encompass a fourth factor, and the court will enquire whether the impairment is reasonable and necessary to serve an important public purpose. *See Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411–12, 103 S.Ct. 697, 704–05, 74 L.Ed.2d 569 (1983); *United States Trust Co. of New York v. New Jersey,*

431 U.S. 1, 25, 97 S.Ct. 1505, 1519, 52 L.Ed.2d 92 (1977).

■ The Court must determine first whether the Court Clerks' Incentive Pay statute was sufficient to form a contract as a matter of federal constitutional law. *Nevada Employees Assoc., Inc. v. Keating,* 903 F.2d 1223, 1227 (9th Cir.1990). In determining whether a state statute creates contractual rights protected by the Contracts Clause of the U.S. Constitution, federal law, rather than state law, controls. *See id.*

■ There is a strong presumption against interpreting statutes as creating contractual rights. *See National R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.,* 470 U.S. 451, 465–66, 105 S.Ct. 1441, 1451–52, 84 L.Ed.2d 432 (1985). "... [A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *Id.* Because "the principal function of the legislature is not to make contracts, but to make laws that establish the policy of the state," the Court will "proceed cautiously both in identifying a contract within the language of a regulatory statute and in defining the contours of any contractual obligation." *Id.* In general, a statute is itself treated as a contract when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State. *United States Trust Co.,* 431 U.S. at 17 n. 14, 97 S.Ct. at 1516 n. 14. More specifically, the Supreme Court requires a showing "unmistakable" intent on the legislature's part before it will create contractual obligations from statutory enactments. *See United States v. Winstar,* 518 U.S. ——, ——, 116 S.Ct. 2432, 2456, 135 L.Ed.2d 964 (1996).

■ In determining if the statute gives rise to a contract, resort is first had to the language of the statute. *See National R.R. Passenger Corp.,* 470 U.S. at 466, 105 S.Ct. at 1451–52. Both the words of the statute and their effect must be examined. *United*

*States Trust Co.,* 431 U.S. at 17 n. 14, 97 S.Ct. at 1516 n. 14.

■ An intent to contract is not immediately obvious from the express language of the Court Clerks' Incentive Pay statute. Most of the words typically associated with contract formation, such as "contract," "consideration," "acceptance," and "reliance," do not appear in the statute. *But cf.* Mass. Gen.Laws c. 32 § 25 (establishing "membership in the retirement system as a contractual relationship under which members are entitled to contractual rights and benefits") (cited in *NEA–RI,* 890 F.Supp. at 1152). The statute, in both its original and amended versions, contains only one reference to contractual language. The word "offering" is used in § 8–4.1–1:

> "There is hereby established an incentive pay program in accordance with the provisions of this chapter *offering* financial compensation to clerks of the supreme, superior, family, and district courts and administrators of the worker's compensation commission for furthering their education in the field of court administration or law enforcement."

R.I.Gen.Laws § 8–4.1–1 (emphasis added). The Perry plaintiffs characterize the legislature's use of language as a deliberate choice intended to describe the incentive pay program in contractual terms. They argue that the incentive pay is an offer made in exchange for a qualifying clerk obtaining education. In contrast, defendants contend that the word "offering" is synonymous with "providing" as it involves the unilateral provision of financial incentives-not the requisite, formal, bargained-for overture sufficient to form a contractual offer. They argue that it is plain language and not an operative legal term.

The use of the word "offering" does have some legal import. According to the Restatement, "[a]n offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981). The legislature made a conscious choice to employ this word, which it undoubtedly knew had legal significance.

The next question is: what is the General Assembly offering to the court clerks? The obvious answer, according to the language of the statute, is "financial compensation." R.I. Gen. Laws § 8–4.1–1. One of the definitions for "compensation" offered in Black's Law Dictionary is "recompense or reward for some loss, injury, or service, especially when it is given by statute." Black's Law Dictionary at 283 (6th ed.1990); *see also Holley v. City of Mt. Vernon,* 126 N.Y.S. 460, 461, 141 A.D. 823 (1910) (" 'compensation' is defined as a 'recompense or reward for some loss, injury, or service, especially when it is given by statute' "). The word "connotes equivalency, that is to say, payment which adequately renumerates, makes amends for wrongs done, or pays for services rendered." *State v. Pitzenbarger,* 6 Ohio Misc. 134, 214 N.E.2d 849, 852 (1965); *see also Kassabaum v. Board of Finance of Town of Lakeville, St. Joseph County,* 215 Ind. 491, 20 N.E.2d 642, 645 (1939). Because compensation is renumeration for services rendered, it is distinguishable from a gift, gratuity, or other voluntary payment. *See Green v. Galvin,* 114 So.2d 187, 189 (Fla.Dist.Ct.App.1959); *Matthews v. Board of Education of Town of Irvington, Essex County,* 31 N.J.Super. 292, 106 A.2d 346, 348 (Ct.App.Div.1954). It is "the renumeration or wages given to an employee." *Treu v. Kirkwood,* 42 Cal.2d 602, 268 P.2d 482, 486 (1954).

Both groups of plaintiffs have analogized the incentive pay program to a pension plan and argued that the right to educational incentive pay, like the right to pension plan, is vested and cannot be altered. *See NEA–RI,* 890 F.Supp. at 1151. In essence, the plaintiffs argue that the benefits provided by the plan may not be altered during each employee's entire term of employment as clerks. However, the words 'compensation,' as used in the Court Clerks' Incentive Pay statute, and 'pension' are not synonymous. *DeWitt v. Richmond County,* 192 Ga. 770, 16 S.E.2d 579, 582 (1941). They are "based upon different theories." *Vero v. Sacramento City Employees' Retirement System,* 41 Cal. App.2d 482, 107 P.2d 82, 84 (1940) (city compensation system and pension plan are based upon different theories and are mutually ex-

clusive). A pension is ordinarily a gratuity or bounty from the government in recognition of but not in payment for past services, while compensation is earned in the present and payable in the future to an employee. *DeWitt,* 16 S.E.2d at 582; *see also Dickey v. Jackson,* 181 Iowa 1155, 165 N.W. 387, 389 (1917). Thus, education incentive pay is fundamentally different in nature from a pension plan, since it is compensation or wages.

A fatal flaw in plaintiffs' argument is that they ignore the essential powers of the legislature, especially those concerning the regulation of the salaries of state employees. Legislatures' policies, including those on salaries, are "inherently subject to revision and repeal." *National R.R. Passenger Corp.,* 470 U.S. at 466–67, 105 S.Ct. at 1451–52. Turning to first principles, there is no constitutional right to receive compensation for any amount in public service. *Malinou v. Powers,* 114 R.I. 399, 333 A.2d 420, 423 (1975). A public officer's right to compensation is not based on contract or property rights, but depends upon the "clear warrant of the law." *Id.* (quoting *Realty Associates Secs. Corp. v. O'Connor,* 295 U.S. 295, 299, 55 S.Ct. 663, 665, 79 L.Ed. 1446 (1935). There exists a fundamental legislative prerogative reserving to the legislature the implicit power of statutory amendment and modification. *Pineman v. Oechslin,* 195 Conn. 405, 488 A.2d 803, 808 (1985); see *also City of Pawtucket v. Pawtucket Teachers' Alliance Local 930,* 87 R.I. 364, 141 A.2d 624, 627 (1958).

The Rhode Island Supreme Court discussed this legislative authority in some detail in its recent opinion in *Retired Adjunct Professors of the State of Rhode Island v. Lincoln Almond, et al.,* 690 A.2d 1342 (R.I. 1997). The Court upheld the Rhode Island legislature's amendment of the statute governing reemployment benefits for retired professors, and provided the following rationale: "[e]ven ships of state from time to time need to reshape or remove the policy barnacles encrusted to their hulls. Otherwise, every statute of benefit to some group or individual would remain immutable and forever crystallized in the past as long as one or more beneficiaries could claim reliance thereon." *Id.* at 1347.

This discussion in *Retired Adjunct Professors* is directly relevant to the task now at hand. Does the legislature have the implicit authority to amend a statute that offers wages to state employees, or must the statute remain forever unchanged? The basis of the plaintiffs' arguments is that compensation may only be increased and may not be decreased during continuous employment. The legislature has the authority to amend the incentive pay statute. *See Craig v. Pare,* 497 A.2d 316, 319 (R.I.1985) ("a [l]egislature has the right 'to alter or amend any [statute] previously adopted'") (quoting *Gosz v. Quattrocchi,* 448 A.2d 135, 138 (R.I.1982)). "It is clear that the Legislature has the right to alter or amend any act by it adopted, including acts appropriating monies, unless such right is expressly or by necessary implication restrained by provisions of the constitution by the adoption of which the Legislature was itself created, or provisions of the Federal Constitution made binding on the states." *Advisory Opinion to the Senate,* 108 R.I. 302, 275 A.2d 256, 257 (1971). This is part of the legislature's function as a branch of government: to enact laws in accord with public policy, amend laws if needed, and revoke laws when necessary. The legislature must not be divested of the tools necessary to carry out these functions. Therefore, the plaintiffs may not rely on the assumption that the incentive pay plan would never change, as the statutes' terms were actually and implicitly subject to change.

Thus, plaintiffs' analogies fail and they cannot rely upon pension plan cases to establish that the court clerks had a contract with the State of Rhode Island. Because educational incentive pay is compensation or wages, it can be modified by the state, just as base salary can be modified. *See* R.I. Gen. Laws § 36–6–5 ("all [state] officials and employees shall be compensated in the manner provided by the annual appropriation act or as may hereafter otherwise be prescribed by law"). No plaintiff could rationally argue that a legislature cannot change the salaries of state employees unless the state has contracted away the right in a collective bargaining agreement. This authority is well within the reach of the General Assembly, and here

the legislature legitimately used its authority to amend the amount of compensation offered in the Court Clerks' Incentive Pay statute.

Furthermore, the plaintiffs have no vested right to receive incentive pay in the same amount in perpetuity. In fact, the Court Clerks' Incentive Pay statute refers to the appropriation of "such sums as [the General Assembly] may deem necessary to carry out the provisions of the chapter." R.I.Gen. Laws § 8–4.1–5. This language suggests that the amount of incentive pay is malleable and reserves the right to change the compensation. Therefore, the state was justified in amending the terms of the Court Clerks' Incentive Pay statute. *See Foley v. Consolidated City of Indianapolis,* 421 N.E.2d 1160, 1168 (Ind.Ct.App.1981) (reliance by police officers on continuance of college incentive plan on same basis as it was originally initiated was unjustified, and action of municipality in revising incentive pay ordinance did not affect vested rights of officers).

The plaintiffs' apparent reliance on a contract was misplaced, as the Court Clerks' Incentive Pay statute does not create a contract as a matter of federal constitutional law. The language of the Court Clerks' Incentive Pay statute is not " 'an adequate expression of an actual intent' of the State to bind itself.' " *National R.R. Passenger Corp.,* 470 U.S. at 466, 105 S.Ct. at 1452 (citing *Dodge v. Board of Education,* 302 U.S. 74, 78, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937)). The words of the statute and their effect evince no "unmistakable intent" to create private contractual rights enforceable against the state. *See United States Trust,* 431 U.S. at 17 n. 14, 97 S.Ct. at 1515 n. 14; *Winstar,* —— U.S. at ——, 116 S.Ct. at 2456. "An act which classifies jobs and fixes salaries is not intended to create private contractual rights to continued employment at those jobs at those salaries, but merely declares policy to be pursued until the legislature shall ordain otherwise." *Hammond v. Temporary Compensation Review Board,* 473 A.2d 1267, 1272 (Me.1984).

These findings compel the conclusion that the revocation of the plan and substitution of the amended plan do not violate the Contract Clause. This result concludes the enquiry into the plaintiffs' Contracts Clause claims. Because no contract exists, there is no need to enquire as to whether any contract rights were substantially impaired or whether those impairments were "reasonable and necessary to serve an important government purpose." *McGrath v. Rhode Island Retirement Board,* 906 F.Supp. 749, 764 (D.R.I.1995). Summary judgment on the Contract Clause claims is granted to the defendants.

**B. The Takings Clause**

■ The plaintiffs' next arguments are asserted under the Takings Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment. U.S. Const. amend. V; *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980); *Lanier v. Fair,* 876 F.2d 243, 253–54 (1st Cir.1989). The *Perry* plaintiffs contend that their right to a percentage pay increase established by the plan constitutes private property such that it is protected from an uncompensated taking by the U.S. Constitution. The Rhode Island Laborers plaintiffs make similar allegations. They claim that their right to the percentage pay increase established under the plan and the parties' collective bargaining agreement constitutes private property such that it is protected from an uncompensated taking. Defendants argue that no private property was taken from either group of plaintiffs in violation of the Takings Clause.

■ The Takings Clause provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V. It guards against the state's imposing society's costs on its citizens when their property is taken and put to public use by the government. *McGrath,* 906 F.Supp. at 769.

■ In order to be protected by the Takings Clause, plaintiffs must have a protectable property interest. Federal, rather than state, constitutional law determines whether the interest created by the state rises to the level of "property," entitled to the various protections of the Fifth and Fourteenth Amendments. *Hoffman v. City of Warwick,*

909 F.2d 608, 615 (1st Cir.1990). A property interest in employment can be created by ordinance or by an implied contract. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). In either case, the sufficiency of the claim of entitlement must be decided by reference to state law. *Id.* "Property interests are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ..." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Plaintiffs need more than a unilateral expectation in a property interest; they must have a legitimate claim of entitlement to it. *Id.*

First, neither the Perry plaintiffs nor the Rhode Island Laborers plaintiffs have a property interest created by contract. *See Bishop v. Wood,* 426 U.S. at 344, 96 S.Ct. at 2077. It was determined above that the Court Clerks' Incentive Pay statute does not create contract rights, so the plaintiffs are not protected by a contract that establishes a right to percentage pay increases. Therefore, the plaintiffs may not benefit from the well-established premise that contract rights are protected by the Takings Clause. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1003, 104 S.Ct. 2862, 2873, 81 L.Ed.2d 815 (1984); *United States Trust,* 431 U.S. at 19 n. 16, 97 S.Ct. at 1516 n. 16 ("[c]ontract rights are a form of property and as such may be taken for a public purpose provided that just compensation is paid").

Second, the Court Clerks' Incentive Pay statute does not give rise to a property interest protected by the Takings Clause. *See Bishop v. Wood,* 426 U.S. at 344, 96 S.Ct. at 2077; R.I.Gen.Laws §§ 8–4.1–1 to –7. There is no language in the statute indicating that the level of incentive pay may not be altered. Nothing in the statute creates an entitlement in the plaintiffs to have the incentive pay remain at a fixed level. *See Patternmakers League of North America,* 619 F.2d 826, 830 (9th Cir.1980). Wages can go down as well as up as conditions change. *Id.* As discussed above, the General Assembly possesses the authority to make changes to the compensation of state employees, and nothing in the

Court Clerks' Incentive Pay statute impinges upon this authority. "Noncontractual employee benefits that a recipient has not yet received, but has a mere expectation of receiving, are not property as to which the government, before repealing, must provide just compensation." *Hoffman,* 909 F.2d at 616.

For these reasons, the plaintiffs' have no property interest in the continuation of the percentage pay increases established under the plan. Since the plaintiffs have property that was taken by the state in violation of the Takings Clause, there is no need to evaluate further their claims under the Takings Clause. Summary judgment on this issue is granted to the defendants.

**C. The Due Process Clause**

In both matters, the plaintiffs' third causes of action are premised on the Due Process Clause of the U.S. Constitution. U.S. Const. art. I, § 10. The Perry plaintiffs and the Rhode Island Laborers plaintiffs allege that the Court Clerks' Incentive Pay statute deprives them of property without due process of law. Both groups of plaintiffs allege first, that the retroactive application of the legislation is a substantive due process violation, and second, that the terms of the statute are so arbitrary, vague and unfair as to violate the plaintiffs' rights to procedural due process. The defendants respond that the plaintiffs have no property interest protected by the Due Process Clause.

**1. Substantive Due Process**

■ The Due Process Clause, which states that no "State [shall] deprive any person of life, liberty or property without due process of law," protects private property interests from arbitrary government action. U.S. Const. amend. XIV; *see McGrath,* 906 F.Supp. at 768. "The predicate to a property interest is a legitimate claim of entitlement under state law.... Denial of such an entitlement in turn creates the basis for a property-interest due process claim." *West v. Town of Bristol,* 712 F.Supp. 269, 274 (D.R.I. 1989).

Plaintiffs' substantive due process claims fail because they have no such property in-

terest. First, it was determined above that the plaintiffs were not party to a contract with the state, so no property rights arise from a contractual basis. *Cf. Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Second, it also was established that the Court Clerks' Incentive Pay statute does not give rise to a property interest. The language of the statute does not confer a property interest, and plaintiffs have not "alleged a tangible interest ... sufficient to invoke the general constitutional protection against arbitrary and irrational government action." *Hoffman,* 909 F.2d at 618.

Therefore, neither the Perry plaintiffs nor the Rhode Island Laborers plaintiffs have a property interest sufficient to invoke the substantive due process protections of the Due Process Clause. Summary judgment on the substantive due process claims is granted to the defendants.

### 2. Procedural Due Process

■ The Due Process Clause also protects against the invasion of the parties' procedural rights. Such protections include adequate notice of the intended deprivation. *See Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The plaintiffs assert that because the plan, as amended, fails to identify which of "any collective bargaining agreement" triggers the implementation of the deprivation of the plaintiffs' rights, they have been denied adequate notice. R.I.Gen. Laws § 8–4.1–7. They claim that this language makes the statute unconstitutionally arbitrary, unfair and vague.

The language is not vague. The plaintiffs have only to look to the expiration date of their own collective bargaining agreement, if any, to find the implementation date of the plan, as amended. In addition, notice of termination of the collective bargaining agreement was sent by letter from the State to Rhode Island Laborers' District Council— Local 808. Furthermore, notice of the change in the incentive pay plan structure was given to the plaintiffs through the legislative process. "Where the legislature enacts general legislation eliminating statutory rights or otherwise adjusting the benefits and burdens of economic life, in the absence

of any substantive constitutional infirmity, 'the legislative determination provides all the process that is due.'" *Hoffman,* 909 F.2d at 619–20 (citations omitted). These circumstances establish that the plaintiffs had notice of the revocation of the plan and that the terms of the plan, as amended, are not unconstitutionally vague.

Based upon these findings, it is clear that the terms of the Court Clerks' Incentive Pay statute do not constitute a procedural due process violation. Summary judgment on the procedural due process claims is granted to the defendants.

### IV. Conclusion

For the foregoing reasons, Rhode Island Public Laws Chapter 125, Sections I and 2, the 1994 amendment to the Court Clerks' Incentive Pay statute, is declared to be constitutional. The Perry plaintiffs' motion for summary judgment on the three constitutional claims is denied, and the Rhode Island Laborers plaintiffs' motion for summary judgment on the three constitutional claims is denied. Both defendants' cross-motions for summary judgment on the three constitutional claims are granted. Judgments will enter for the defendants for costs.

So Ordered.