DECISION
Before this Court is an administrative appeal wherein the appellant Blue Cross and Blue Shield of Rhode Island (Blue Cross) seeks reversal of the Decision and Order issued by the Director (Director) of the Department of Business Regulation (Department or DBR) on March 16, 2001 (First Decision) and subsequently modified by the Supplemental Decision issued on November 5, 2001 (Second Decision), in which the Director adopted sanctions recommended by the Hearing Officer against Blue Cross for its violation of the Small Employer Health Insurance Availability Act, G.L. 1956 § 27-50-1 et seq., as amended by P.L. 2000, chs. 200 and 229 (Act). Jurisdiction is pursuant to G.L. 1956 §§ 42-35-15 and8-2-13.
 Facts/Travel
The parties to this action agreed to bifurcate this administrative appeal. In the first phase, the parties agreed to have this Court, on an expedited basis, address the dispositive legal issue of whether the Act mandated that, as of October 1, 2000, Blue Cross had to provide a four-tier rating system based on the types of family composition set forth in G.L. 1956 § 27-50-3(q). This Court rendered a decision on this stipulated issue in Blue Cross Blue Shield of Rhode Island v. McConaghy, C.A. No. 01-1570, Sept. 5, 2001, Silverstein, J. The facts as set forth in that decision are adopted here though more detail as to the facts and travel regarding the sanctions imposed by the Department against Blue Cross will be provided.
In the First Decision issued on March 16, 2001, the Director adopted the recommendations of the Hearing Officer and found that "[t]he Act mandates a four tier rating system based on the four different categories of `family composition' as defined by the Act." (First Decision at 20.) In addition, the Director held that "[t]he Department has authority to impose sanctions in this matter pursuant to [G.L. 1956] § 42-14-16. The recommended sanctions are appropriate and necessary in order for the Department to enforce the mandates of the Act." Id. The Department imposed the following sanctions:
 "A. Respondent be ordered to cease and desist from issuing and/or renewing any health benefit plans to small employers pursuant to the Act unless and until the rating system used by Respondent to establish the rates for said coverage uses all four tiers within the definition of "family composition" under R.I. Gen. Laws § 27-50-3(q)(1-4).
 B. With respect to all health insurance plans previously issued or renewed for small employers pursuant to the Act during the Period, Respondent shall develop a four tier rating system applicable to said plans. Respondent shall take whatever steps necessary to recalculate premium rates for each health benefit plan issued and/or renewed during the Period, and determine what premiums would have been payable by each such plan using the mandatory four tier rating system. The Respondent shall provide to the Hearing Officer an accounting of and supporting documentation for all premium payments made under said health benefit plans (using a two tier system) which exceed the rate that would have been payable had the rates initially been determined using the four tier system. The difference between the higher premium paid under the two tier system and the lower premium that would have been paid for the Period using the four tier rating system shall be refunded to the person/entity that made the payments.
 C. In recalculating the premiums for the Period, if the Respondent determines that any person/entity paid less in premiums under the two tier system than it would have paid under a four tier system, Respondent shall provide the Hearing Officer with an accounting of and supporting documentation for all premium payments made using a two tier system under said health benefit plans which are less than the premium payments that should have been paid for the Period. Since it would be inequitable for persons/entities to be retroactively charged for underpayments caused by Respondent's use of a two tier as opposed to a four tier system, the difference between said lower premium paid for the Period and the higher premium that would have been paid for the Period using the four tier rating system shall constitute part of the administrative penalty payable in this matter by Respondent.
 D. All Premiums due for periods subsequent to the date of this Decision for health benefit plans issued and/or renewed during the Period shall be calculated using a four tier rating system consistent with the definition of "family composition" under the Act.
 E. In addition to the administrative penalty referred to in C above, Respondent shall pay an administrative penalty of ten thousand dollars ($10,000.00) for its failure to use a four tier rating system consistent with the definition of "family composition" in R.I. Gen. Laws § 27-50-5(a)(5).
 F. Respondent shall submit the above referenced accountings and documentation to the Hearing Officer and Department by April 12, 2001.
 G. A hearing to (i) review the accountings and supporting documentation submitted pursuant to this Decision; (ii) set the date by which the above referenced refunds shall be made; and (iii) calculate the exact amount of the administrative penalty under this Decision shall be held on April 19, 2001 at 9:30 a.m."
On March 28, 2001, Blue Cross timely filed an administrative appeal to this Court and moved for a stay and/or temporary restraining order to which the Director objected. On March 29, 2001, this Court granted a stay of section VII(D) of the First Decision with regard to Blue Cross's billings for the April 1, 2001 billing cycle and granted a temporary restraining order preventing the Department from enforcing section VII(D) with respect to the same period. Thus the Court allowed Blue Cross to issue April 1, 2001 bills using a two-tier system to all persons or entities whose health plans were issued or renewed during the period between October 1, 2000 and the date of the First Decision, March 16, 2001.
On April 19, 2001, the Hearing Officer held a hearing regarding Section VII(G) as required by the First Decision. The Hearing Officer recognized that the parties had agreed to stay all enforcement aspects of the Decision, except for section VII(D), until sixty (60) days after this Court rendered a decision on the underlying legal issue. On April 23, 2001, the Department denied Blue Cross's request to stay enforcement of section VII(D) of the Decision with respect to the May 1, 2001 billing cycle. On April 25, 2001, Blue Cross filed a Motion for Further Stay and/or Restraining Order to which the Department objected. Blue Cross sought an order that would stay section VII(D) of the Decision and temporarily restrain the Director and Department from enforcing or causing to be implemented section VII(D) of the Decision until sixty (60) days after the Court rendered its decision on the underlying legal issue. On April 26, 2001, this Court granted Blue Cross's request and issued an order (Order) stating:
 "Section VII.D. of the Decision of the Department of Business Regulation dated March 16, 2001 and designated D.B.R. No. 00-I-0146 (the "Decision") is hereby further stayed and the Director of the Department of Business Regulation and/or the Department of Business Regulation are further temporarily restrained from enforcing or causing to be implemented Section VII.D. of the Decision until sixty (60) days after this Court has rendered a decision on the legal issue specified in paragraph 1 of the attached Order entered on April 23, 2001; provided, however, the stay and temporary restraining order are conditioned upon Plaintiff refunding for periods from and after April 1, 2001, any excess premiums paid by small employers on October 2000 through March 2001 rating cycles who continue to be charged by Plaintiff on a two-tier basis as opposed to a four-tier basis if (and only if) the Court decides that the Act (as defined in the attached Order) mandated Plaintiff to provide coverage in the small employer market for four-tiers of family composition and thereby prevented Plaintiff from continuing to write two-tier family composition coverage from and after October 1, 2000."[1]
On September 5, 2001, this Court issued a decision on the stipulated issue of whether the Act required Blue Cross, as of October 1, 2000, to provide a four-tier rating system. This Court held that:
 "[t]he Director neither exceeded her authority nor erred as a matter of law in determining that the Act requires small employer carriers to use a four-tier rating methodology pursuant to the four types of family composition set forth in § 27-50-3(q) (1-4). Accordingly, Blue Cross's appeal with respect to the issue of law is denied, and the Decision with respect to the Act's mandating the use of a four-tier rating system is hereby affirmed. Further the petitioner's request for an Order that the Act `does not require the mandatory use of all four tiers of family composition' is denied." Blue Cross Blue Shield of Rhode Island v. McConaghy, C.A. No. 01-1570, Sept. 5, 2001, Silverstein, J.
The Court carefully noted, however, that "[t]his decision . . . resolves only the controversy surrounding the Director's interpretation of the Act, as applied to the instant facts." Id.
On October 4, 2001, the Department held a hearing to receive testimony regarding the calculation of the difference in premiums between the two-tier and four-tier rating system during the Stay Period. On October 31, 2001, Blue Cross filed a Motion for Further Stay of the penalties until the Director issued a decision on the Department's request to add to the penalties imposed on the First Decision. On November 1, 2001, this Court extended the stay until November 6, 2001. However, on November 5, 2001, the Department issued a Supplemental Decision on Penalties Imposed in the March 16, 2001 Decision (Second Decision), which provides that:
 "A. Pursuant to R.I. Gen. Laws § 42-14-16(a)(3)(4) and (5), Respondent be ordered to refund to the persons/entities that paid the premiums the difference between the higher premium paid under the two tier system and the lower premium that would have been payable using a four tier system for the period October 1, 2000 through November 2001. The total amount to be refunded according to the information submitted by Respondent is $2,226,080.74.
 B. Respondent be ordered to file with the Department an accounting detailing the persons/entities that received refunds hereunder, the amount of said refunds, and the date said refunds were made.
 C. Pursuant to R.I. Gen. Laws § 42-14-16(a)(3)(4) and (5), Respondent be ordered to absorb as part of the administrative penalty in this matter, the difference between the lower premiums paid using a two tier system and the higher premium that would have been payable using the four tier system for the period of October 1, 2000 through November 2001. That amount according to the information submitted by Respondent is $2,279,629.40.
 D. Pursuant to R.I. Gen. Laws § 42-14-16(a)(2) and in addition to the above-referenced administrative penalty, Respondent be ordered to pay an additional administrative penalty of $10,000 for its failure to use a four tier rating system consistent with the definition of "family composition" in R.I. Gen. Laws § 27-50-5(a)(5).
 E. Respondent be ordered to submit to the Department for prior review and approval any written notice it intends to send to contract holders regarding the Decision, this Supplemental Decision and/or the refunds required to be made as a result thereof.
 F. In the event that Respondent does not implement a four tier rating system for the remaining Gap Group as of the December 1, 2001 billing cycle, Respondent be ordered to appear at a hearing before the undersigned to set forth the reasons why said four tier system was not implemented as of December 1, 2001 and to appear from time to time thereafter to set the penalties resulting from said failure to implement a four tier system consistent with the terms of the Decision and this Supplemental Decision.
 G. All terms, conditions and orders of the Decision not specifically amended by this Supplemental Decision shall continue in full force and effect."[2]
Before this Court is the second phase of this bifurcated administrative appeal which deals with the penalties imposed on Blue Cross for its failure to comply with G.L. 1956 § 27-50-1, et. seq. Blue Cross raises a number of arguments on appeal, including that the Department lacks the statutory authority to order refunds of the premiums paid, that the penalties imposed by the Department are in violation of constitutional and statutory protection, that the imposition of penalties was arbitrary, capricious, and/or a clearly unwarranted abuse of discretion, that the penalties are invalid because the Department failed to give Blue Cross proper notice, and that the order requiring Blue Cross to obtain Department approval before communicating with its customers about the First and Second Decisions violate statutory provisions and the First Amendment.
 Standard of Review
This Court will review a decision of the Department pursuant to G.L. 1956 § 42-35-15 which provides, in pertinent part:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency with regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1998); Carmody v. Rhode Island Conflict of Interest Comm'n, 509 A.2d 453, 458 (R.I. 1986). The Court's review is limited to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnson Ambulatory Surgical Associates, Ltd. v. Patricia Nolan, et. al., 755 A.2d 799, 804-05 (R.I. 2000) (quoting Barrington School Comm. v. Rhode Island State Labor Relations Bd.,608 A.2d 1126, 1138 (R.I. 1992)). "Legally competent evidence is indicated by the presence of `some' or `any' evidence supporting the agency's findings." Environmental Scientific Corp. v. Durfee, 621 A.2d 200, 208 (R.I. 1993) (quoting Sartor v. Coastal Resources Management Council,542 A.2d 1077, 1082-83 (R.I. 1988)). In conducting its review, this Court is precluded from substituting its judgment for that of the agency as to the weight of the evidence on questions of fact, Center for Behavioral Health v. Barros, 710 A.2d 680, 684 (R.I. 1998), even when this Court "might be inclined to view the evidence differently and draw inferences different from those of the agency." Johnson Ambulatory Surgical Associates, Ltd. v. Patricia Nolan, et. al., at 805 (quoting Rhode Island Public Telecommunications Auth. v. Rhode Island State Labor Relations Bd., 650 A.2d 479, 485 (R.I. 1994). This Court must affirm an agency's decision unless the agency's findings in support of its decision are completely bereft of any competent evidentiary support. Rocha v. State Public Utilities Comm'n, 694 A.2d 722, 726 (R.I. 1997).
 The Department's Power to Issue Refunds
Blue Cross asserts that the Department lacks the statutory authority to order Blue Cross to issue a refund to small employers who were overcharged when Blue Cross failed to convert to a four-tier rating system as mandated by statute. Blue Cross states that where the Legislature wanted a regulatory agency to have the power to order refunds it directly granted such authority. Specifically, Blue Cross notes that there are several provisions within Title 27 where the Legislature "explicitly and expressly grant[ed] the [Department] the power to order refunds of premium under certain circumstances for types of insurance other than those at issue here." (Pl.'s Mem. of Law at 10.) Moreover, Blue Cross argues that as an administrative agency created by statute, the Department has no inherent or common law powers to take any action outside those specifically permitted under its enabling legislation. Alternatively, the Department contends that the Legislature provided the Director of the Department of Business Regulation with specific statutory authority to take a variety of actions, including the ability to order refunds, when a violation of Title 27 occurs. The Department argues that such authority is derived from G.L. 1956 § 42-14-16, which provides, in pertinent part, that:
 "(a) [w]henever the director shall have cause to believe that a violation of title 27 or the regulations promulgated thereunder has occurred by a licensee, the director may, in accordance with the requirements of the Administrative Procedures Act, chapter 35 of this title:
 (1) Revoke or suspend a license;
 (2) Levy an administrative penalty in an amount not less than one hundred dollars ($100) nor more than fifty thousand dollars ($50,000);
 (3) Order the violator to cease such actions;
 (4) Require the licensee to take such actions as are necessary to comply with title 27 or the regulations thereunder; or
 (5) Any combination of the penalties."
Thus, the Department argues that since Blue Cross was found to be in violation of the Small Employer Health Insurance Availability Act, G.L. 1956 § 27-50-1, et. seq., the Department has the authority to "require [Blue Cross] to take such actions as are necessary to comply with title 27." Specifically, the Department relies on the power granted by G.L. 1956 § 42-14-16(a)(4) to order Blue Cross to issue refunds.
In support of its first argument that the Department lacks the statutory authority to order refunds, Blue Cross relies heavily on Ligouri v. Aetna Casualty and Surety Co., 384 A.2d 308, 119 R.I. 875
(R.I. 1978), which involved an appeal of a ruling by the State Insurance Commissioner that the insurer had unlawfully canceled an insured's coverage and ordered the insurer to reinstate the insurance coverage. The Commissioner argued that his authority to order reinstatement of the insurance coverage was based on his "statutory authority to regulate the insurance industry by the issuance of rules and is implicit in his statutory power to suspend or revoke a license when the public interest so requires." Id. at 312. The Rhode Island Supreme Court stated that:
 "[w]hile the licensing power of the [insurance] commissioner is great, it does not permit him to automatically impose whatever lesser sanctions he deems fit to remedy a given situation. As head of a regulatory body, the commissioner may exercise only those powers either expressly, or by reasonable implication, conferred upon him by the General Assembly . . . conspicuously absent from title 27 is any suggestion that the commissioner as part of his authority can provide such relief as ordering the reinstatement of insurance coverage to a disgruntled policyholder." Id at 312. (citations omitted).
To arrive at this decision, the Court analyzed the different statutory provisions which empowered the Commissioner to "suspend or revoke a license . . ., institute a civil action involving stock, report certain unlawful practices to the Attorney General" and determined that "[n]one of these sanctions . . . even remotely resembles legal or equitable remedies which the commissioner asserts that he has jurisdiction to dispense." Id. at 312-13. Finally, the Court noted that:
 "if the General Assembly had wanted the commissioner to exercise such authority, it would have so provided in clear and certain terms. The Legislature's omission in this regard evidences an intent to have the jurisdiction to provide legal and equitable relief remain in the traditional repository of the authority of the courts of the state." Id. at 313.
Thus the Court's holding in Liguori was based on the Insurance Commissioner's lack of statutory authority to order reinstatement of coverage that had been previously terminated. However, as the Department correctly observes, the Liguori opinion was issued prior to the Legislature's enactment of G.L. 1956 § 42-14-16 in 1992. General Laws § 42-14-16 itemizes the different approaches that the Director may take to ensure compliance with the provisions of Title 27. Thus, Liguori is distinguishable from the case at bar because the Director relied on the specific statutory authority granted to her under G.L. 1956 §42-14-16, particularly subsection (a)(4), to order Blue Cross to issue refunds.[3] In Liguori, the Insurance Commissioner conceded that no "statute detailing his regulatory powers authorize[d] him to order an insurer to reinstate coverage after a finding that a department regulation is applicable to a given transaction." Id. at 312. The Insurance Commissioner's authority starkly contrasts that of the instant Director who stated:
 "[i]n enacting R.I. Gen. Laws § 42-14-16(a)(4) and expanding the Department's powers, the legislature granted the Department the power and authority to do what the Hearing Officer did — to enforce compliance with Title 27 by requiring Blue Cross to do what it should have done. This enforcement power also mitigates harm to the public." (Def.'s Brief at 11.)
Thus the Director's ability to invoke her enumerated power under G.L. 1956 § 42-14-16(a)(4) to order Blue Cross to issue refunds enables her to escape the misguided or insupportable position of the Insurance Commissioner in Liguori who, unable to find any statutory authority for his action, sought to defend his actions based on "implicit" or inherent powers to protect the public interest.
Blue Cross further asserts in a closely related argument that "[a]s legislative creatures without inherent or common-law powers, administrative agencies possess no ability to take any action that is not specifically granted in the enabling legislation that creates them, or reasonably derived therefrom." (Pl.'s Mem. of Law at 9) (citing F. Ronci Company, Inc. v. Narragansett Bay Water Quality Management District Commission, et. al., 561 A.2d 874, 881 (R.I. 1989)). This Court agrees that "[i]t is well established that administrative agencies are purely legislative creatures possessing no inherent or common-law powers." Berkshire Cablevision of Rhode Island v. Burke, 488 A.2d 676, 679 (R.I. 1985). "[A]dministrative agencies are not authorized to modify the statutory provisions under which they acquired power absent clear legislative intent." Little v. Conflict of Interest Commission,397 A.2d 884, 886, 121 R.I. 232, 236 (R.I. 1979). It is outside the purview of this Court "to rewrite or amend statutes that the General Assembly enacted." Rhode Island Federation of Teachers, AFT, AFL-CIO v. Sundlun, 595 A.2d 799, 802 (R.I. 1991). However, as previously discussed, the Director did not rely on any inherent powers in ordering Blue Cross to refund the premiums. Rather, the Director based her order on the specific statutory authority granted to her under G.L. 1956 §42-14-16(a)(4) to require Blue Cross "to take such actions as are necessary to comply with title 27."
It is undisputed that there are several provisions within the General Laws that explicitly discuss the power of a regulatory agency or governmental entity to order refunds. See G.L 1956 §§ 3-10-21 (liquor control administrator shall order refund of taxes and services on lost, unmarketable or condemned beverages); 24-4-7 (general treasurer shall refund to any city or town any money remaining from the actual contribution of the town or city for highway projects); 39-3.13.1 (Public Utilities Commission has the power to order refunds under certain circumstances); 44-1-11 (general treasurer shall refund erroneous payment or overpayment of any tax, excise, fee, penalty, interest or other charge made to tax administrator). Moreover, there are sections within Title 27 where the Legislature specifically empowers the Department to order refunds. See G.L. 1956 §§ 27-9-18(b)(2) (commissioner shall order refund of all excess profits obtain by casualty insurer); 27-9-51(g) (commissioner shall order refund of excess profit of an insurance group offering workers' compensation or employers' liability insurance);27-18.2-3(f)(1) (director shall adopt reasonable regulations, such as requiring refunds if policies do not meet loss ratio requirements, to ensure conformity of Medicare supplement policies and certificates with federal law); 27-30-8 (commissioner may prescribe minimum refunds for credit life insurance premiums if the insurance terminates before the scheduled maturity of the debt); 27-31-9 (commissioner may prescribe minimum refunds for credit accident and health insurance if the insurance terminates before the scheduled maturity of the debt).
Blue Cross argues that the lack of specific statutory authority permitting the Department to issue refunds indicates that the Legislature did not intend the Department to have such powers. Blue Cross further contends that this issue was directly addressed by the Rhode Island Supreme Court in Narragansett Electric Co. v. Burke, 404 A.2d 821,122 R.I. 13 (R.I. 1979). In Narragansett Electric, the electric company petitioned for writ of certiorari requesting the Court review and quash the order of the Public Utilities Commission requiring Narragansett Electric to refund all revenues collected in excess of those it would have earned had the rates been implemented as authorized by the Commission. Id. at 825. The Court held that "the PUC acted in excess of its jurisdiction when it . . . ordered Narragansett to refund the amount of revenues collected in excess of those that would have been collected had the rates been designed to comply with the January 24, 1972 order and the March 26, 1972 decision." Id. at 826-27. In arriving at this decision, the Court focused on the ratemaking function of the Commission and noted that "rates are exclusively prospective in nature and that future rates may not be designed to recoup past losses." Id. at 827. The Court also noted that "[a]s a creation of the General Assembly, the PUC derives all of its powers, duties and responsibilities from its enabling act." Id. at 828. Furthermore, the Court refused to apply the statute retroactively given the well settled rule that a statute will not be retroactively applied if it "creates, defines and regulates substantive legal rights." Id. (Citations omitted.)
In both Narragansett Electric and Liguori, the Rhode Island Supreme Court refused to expand the powers of regulatory agencies beyond those specifically enumerated in their enabling statutes. In Narragansett Electric, the Court struck down an order issued by the Public Utilities Commission (PUC) requiring the electric company to issue certain refunds. The Court found that the power to order such refunds was not granted to the PUC until enactment of G.L. §§ 39-3-13.1 and 39-4-10 in 1975, some three years after the events giving rise to this action arose. Similarly, the Court in Liguori found that the Insurance Commissioner lacked the authority to order reinstatement of insurance coverage that had been terminated. However, since Ligouri, the Legislature has enacted G.L. 1956 § 42-14-16(4), which expressly grants the Department the power to "require the licensee to take such actions as are necessary to comply with title 27 or the regulations thereunder." In Blue Cross Blue Shield of Rhode Island v. McConaghy, C.A. No. 01-1570, Sept. 5, 2001, Silverstein, J., this Court affirmed the decision of the Director which found Blue Cross in violation of the Small Employer Health Insurance Availability Act, G.L. 1956 § 27-50-1, et. seq. Here, the Director argues by issuing an order requiring Blue Cross to refund overcharges, the Department seeks to "place the specific insurers who were overcharged in the same position they would have been in had Blue Cross followed R.I. Gen. Laws § 27-50-1, et. seq. in rating its small employer policies." (Def.'s Mem. at Law at 14.) Thus, by ordering Blue Cross to issue refunds, the Department insists that it is seeking to ensure Blue Cross's compliance with the requirements of Title 27, particularly the Small Employer Health Insurance Availability Act.
Another argument advanced by Blue Cross is that the Order issued by this Court staying enforcement of Section VII(D) of the Department's First Decision does not sanction the refunds ordered by the Department in its Second Decision. The Order was conditioned on Blue Cross's payment of refunds to small employers if the Court determined that the Act mandated a four-tier rating methodology. Blue Cross contends that through its Second Decision the Department has "changed the controlling facts on which the Silverstein Stay Order was granted and subverted the conditions to pay refunds." (Pl.'s Mem. of Law at 12.) Thus, Blue Cross requests that this Court vacate or modify the stay order to prevent an inequitable result. However, the Department asserts that "[t]he stay was requested by Blue Cross and was solely for its benefit." (Def.'s Mem. of Law at 18.) Moreover, the Department argues that it "advocated for this conditional provision in the stay in order to assure that repayment of overcharges would not be an issue." (Def.'s Mem. of Law at 17.)
Blue Cross relies on Harris v. Town of Lincoln, 668 A.2d 321, 328 (R.I. 1995), for the proposition that "[a] sufficient change in circumstances is a meritorious reason for a court to modify an injunction . . . but the consideration of a motion to modify an injunction does not allow relitigation of issues that have already been resolved at trial." (Citations omitted.) See also, Crystal Restaurant Management Corp. v. Calcagni, 732 A.2d 706, 711 (R.I. 1999) (quoting Larken Minnesota, Inc. v. Wray, 881 F. Supp. 1413, 1419 (D.Minn. 1995), affd., 89 F.3d 841 (8th Cir. 1996) (Injunctive decrees may be modified "where changed circumstances require modification in order to achieve the purposes underlying the initial grant of relief.")). In the instant case, however, Blue Cross has failed to show that any changed circumstances warrant modification of the order staying enforcement of Section VII(D) of the Department's First Decision. From the outset, the Department expressed its intent to require Blue Cross to issue refunds to those small employers who were overcharged when Blue Cross refused to implement a four-tier rating system. (First Decision at 21.) In addition, the Department has persistently maintained that since it would be "inequitable" to retroactively charge small employers who were undercharged by Blue Cross under the two-tier rating system, such undercharges shall constitute part of penalty paid by Blue Cross for its noncompliance. (First Decision at 21-22.) Like the defendants in Harris v. Town of Lincoln, 668 A.2d 321 (R.I. 1995), Blue Cross is "not claiming that circumstances had changed but that circumstances remained the same." Since the Order staying enforcement of the recommended penalties to be imposed on Blue Cross was granted, the Department has had the benefit of the submission of information necessary to calculate refunds, as well as a hearing at which the Department received testimony regarding the calculation of the differences in premiums paid under a four-tier, as opposed to a two-tier, rating methodology. This information has assisted the Department in calculating the proper amount of penalties to be assessed against Blue Cross. Aside from the Department's receiving this testimony and evidence, there have been no changes in circumstances that would warrant this Court's modification of the Order requiring Blue Cross to refund overcharges upon the determination that Blue Cross violated the Small Employer Health Availability Act, which mandates a four-tier rating methodology.
 The Right to a Trial by Jury
Blue Cross further argues that the Department's order requiring Blue Cross to refund overcharges, which amounts to approximately $2.2 million, is neither "an administrative penalty [nor a] fine" but is, in effect, a damage award to small employers. (Pl.'s Mem. at 14.) Thus Blue Cross asserts that the imposition of such an award violates its right to a jury trial as provided by R.I. Const. Art. I, § 15.[4] The Department maintains that the administrative penalty imposed on Blue Cross does not implicate the constitutional right to a trial by jury since it "did not adjudicate the dispute between the small employers and Blue Cross. [But] [r]ather, it enforced a `statutorily created public right.'" (Def.'s Mem. at 21.) (Citations omitted.)
The Rhode Island Supreme Court has had numerous opportunities to deal with the right to a jury trial guaranteed in article 1, section 15, of the Rhode Island Constitution as it relates to state administrative regulation. See Calore Freight Systems, Inc. v. State, 576 A.2d 1214
(R.I. 1990); F. Ronci Co. v. Narragansett Bay Water Quality Management District, 561 A.2d 874 (R.I. 1989); Bendick v. Cambio, 558 A.2d 941
(R.I. 1989). However, it was not until National Velour Corp. v. Durfee,637 A.2d 375, 377 (R.I. 1994), that the Court addressed the issue of:
 "whether the General Assembly has the authority to place the adjudication and imposition of civil penalties for the violation of regulatory statutes with an administrative agency without providing for the opportunity for a jury trial at any time during the adjudication of the alleged violation." Id. at 378.
In holding that the "Legislature has the authority to create this regulatory and enforcement scheme without violating section 15 of article 1 of the Rhode Island Constitution," the Court was influenced by the distinction between "public and private rights." Id. at 379. Cases involving public rights are those "in which the Government sues in its sovereign capacity to enforce public rights created by statutes within the power of Congress to enact." Id. at 379 (quoting Atlas Roofing Co. v. Occupational Safety and Health Review Commission, 430 U.S. 442, 450, 97 S.Ct. 1261, 1266, 51 L.Ed.2d 464, 472 (1977)). In addition, public rights arise in "cases in which Congress may decline to provide jury trials . . . involving statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to an administrative agency or specialized court of equity." Id. (quoting Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 55 n. 10, 109 S.Ct. 2782, 2792 n. 10, 106 L.Ed.2d 26, 49 n. 10 (1989)). The Court noted that "[i]f the action involves the adjudication of public rights, no jury is required pursuant to the Seventh Amendment to the Constitution or section 15 of article 1 of the Rhode Island Constitution." Id. In National Velour, the Court found that the "environmental-enforcement action which DEM brought against National Velour clearly involved a public right." Id. at 380.
In the instant case, through the Department, "[t]he state was a party to the action to enforce a statutory right that is a part of a pervasive regulatory scheme." Id. The Legislature assigned enforcement of the various provisions of Title 27 to the Department. To this end, the Legislature empowered the Department to "[r]equire the licensee to take such actions as are necessary to comply with title 27." See G.L. 1956 § 42-14-16(a)(4). By ordering Blue Cross to refund overcharges, the Department is seeking to ensure that Blue Cross will comply with Small Employer Health Insurance Availability Act, G.L. 1956 § 27-50-1 et seq. Thus, the order issued by the Department involved the adjudication of a public right to which no right to a jury trial adheres under R.I. Const. Art. I, § 15.
Blue Cross's reliance on the distinction drawn by the Rhode Island Supreme Court in Fud's Inc. v. State, 727 A.2d 692 (R.I. 1999), is misplaced. In Fud's Inc. v. State, the issue before the Court was "whether employers have a constitutional right to a jury trial in connection with unlawful-employment-practice charges that are brought against them?" Id. at 693. The Court stated that this action brought under the Fair Employment Practices Act did not "exclusively involve `public rights' as they were defined in National Velour." Id. at 698. The Court proceeded to explain:
 "[a]lthough the right of employees to be free from employment discrimination is indeed `statutory' and its `adjudication has [been] assigned to an administrative agency,' their right to sue employers and to obtain compensatory and/or punitive damages for any violation of their rights to be free from employment discrimination falls more on the side of a traditional private remedy for legal wrongdoing than it does on the side of constituting an integral component of a public regulatory scheme." Id.
Thus, the Court in Fud's Inc. v. State was faced with a "hybrid cause of action" that combined both the adjudication of public rights and "a private party's right to obtain compensatory and/or punitive damages from another private party for a statutory violation." Id. at 698. However, the cause of action in the instant case, that is, the appeal of civil penalties imposed by an administrative agency for violation of certain statutory requirements, does not implicate private rights. Since the case at bar involves the adjudication of public rights only, "a litigant's inviolable constitutional right to obtain a jury trial" is not jeopardized. Id.
 The Monetary Penalties Imposed by the Department
This Court having found that the Department possesses the statutory authority to order Blue Cross to issue refunds, Blue Cross' argument that the penalties imposed by the Department are constitutionally and statutorily prohibited must fail. Blue Cross contends that the Department is limited to assessing penalties of "not less than one hundred dollars ($100), nor more than fifty thousand dollars ($50,000)." See G.L. 1956 § 42-14-16(a)(2). Thus, Blue Cross maintains the penalties assessed by the Department, which are in excess of two million dollars, are not statutorily permissible. The Department assails Blue Cross's interpretation as one that creates "little financial incentive [for licensees] to comply with Title 27." (Def.'s Mem. of Law at 23.) The Department argues "[o]nce a licensee had paid a $50,000 penalty, it would be free to continue that violation with other customers since there would be no financial disincentive to do otherwise." Id. Furthermore, "[t]he Department must have a mechanism for enforcing statutory compliance and for imposing administrative penalties to deter noncompliance. Without these tools, the Department would be a regulatory agency without the power to effectively fulfill its statutory mandates and regulatory responsibilities to protect consumers." (Second Decision at 20.) As discussed above, the Department's ability to order Blue Cross to issue refunds to those small employers overcharged by its decision not to implement a four-tier rating system, is based on the powers granted under G.L. 1956 § 42-14-16(a)(4). Unlike the verbiage of subsection (a)(2), the language of subsection (a)(4) does not contain any specific monetary limitations regarding the amount that may be imposed on a licensee found to be in violation of Title 27. Rather, subsection (a)(4) provides the Department with broader powers to require a licensee to "take such actions as are necessary" to ensure compliance.
In a closely related argument, Blue Cross also maintains that a reading of G.L. 1956 § 42-14-16(a)(4), which permits the Department to order refunds, "eviscerates" G.L. 1956 § 42-14-16(a)(2) by rendering the statutorily mandated cap on monetary damages meaningless. It is a well-settled rule of statutory construction that a court will give "effect to all of a statute's provisions, with no sentence, clause or word construed as meaningless or surplusage." Local 400, International Federation of Technical and Professional Engineers v. Rhode Island State Labor Relations Board, 747 A.2d 1002, 1005 (R.I. 2000). However, the Department imposed a variety of penalties, including the order to issue refunds, as permitted under G.L. 1956 § 42-14-16(a)(5). The Department imposed the following:
 "(i) an administrative penalty of $10,000 pursuant to R.I. Gen. Laws § 42-14-16(a)(2); (ii) a cease and desist order pursuant to R.I. Gen. Laws § 42-14-16(a)(3); (iii) an order requiring [Blue Cross] to rate all contracts on a four-tier basis as of the effective date of the Act, i.e. October 1, 2000 pursuant to R.I. Gen. Laws §§ 42-14-16(a)(3),(4) and (5); (iv) a requirement that all contract holders be refunded any overpayments pursuant to R.I. Gen. Laws §§ 42-14-16(a)(3), (4) and (5); and (v) a requirement that [Blue Cross] absorb as part of an administrative penalty any undercharges to contract holders pursuant to R.I. Gen. Laws §§ 42-14-16(a)(3), (4) and (5)." (Second Decision at 17.)
Thus, contrary to Blue Cross's claims, interpreting G. L. 1956 §42-14-16(a)(4) to permit the Department to order refunds does not render subsection (a)(2) meaningless. These different provisions act in pari materia to ensure that companies like Blue Cross will comply with the mandates of Title 27.
 The Penalties Imposed by the Department
Blue Cross argues that the penalties imposed by the Department are excessive given the lack of "some factual basis for a finding of malfeasance or flagrant or willful refusal to comply with DBR's known interpretation of the Act." (Pl.'s Mem. of Law at 20.) Moreover, Blue Cross asserts that the Department's actions are based on the mistaken belief, unsupported by any competent evidence, that Blue Cross "knowingly, willfully, and flagrantly refused to comply with the known, formal position of DBR on four-tier rating." Id. The Department responds that there was sufficient testimony received, at the hearings before the agency, to support its imposition of penalties for Blue Cross's insistence that a two-tier rating system was permissible and for its refusal to convert to a four-tier methodology as mandated by statute. The Department contends that the true nature of Blue Cross's argument is that the penalty imposed "was too harsh in light of its evidence regarding how difficult it would have been to comply with the law." (Def.'s Mem. of Law at 29.)
The jurisdiction of this Court to review a decision of the Department is pursuant to G.L. 1956 § 42-35-15. In undertaking this review, this Court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Rocha v. State Public Utilities Comm'n, 694 A.2d 722, 725 (R.I. 1997) (quoting Barrington School Committee v. Rhode Island State Labor Relations Board,608 A.2d 1126, 1138 (R.I. 1992)). The Court must affirm the agency's conclusions when they are supported by legally competent evidence in the record. Id. at 725-26. (Citations omitted.) Finally, "when more than one inference may be drawn from the record evidence, the Superior Court is precluded from substituting its judgment for that of the agency and must affirm the agency's decision unless the agency's findings in support of its decision are completely bereft of any competent evidentiary support." Id. (citing Sartor v. Coastal Resources Management Council, 542 A.2d 1077, 1083 (R.I. 1988)).
In the instant case, a review of the record reveals that there was competent evidence upon which the Department based its imposition of penalties against Blue Cross. In Section IV(B) of the Second Decision, the Department details how it calculated the penalties imposed on Blue Cross and also discusses the evidence upon which these calculations were made. The Department calculated the penalties based on the following: (1) evidence submitted at a hearing held on April 19, 2001, (2) testimony of Mr. Michael J. Recorvits, Assistant Vice-President of Blue Cross and a Blue Cross employee for thirty-one years, (3) accountings showing the impact of compliance with the Act submitted by Blue Cross, and (4) evidence that approximately seventy (70) percent of all enrollees would receive a reduction in premiums from a conversion to the four-tier rating system mandated by the Act. (Second Decision at 6-8.) In reviewing the findings of the Department, this Court is precluded from "independently reevaluating the hearing evidence upon which those findings were made and . . . [substituting] its own judgment on the weight thereof." Rocha v. State Public Utilities Comm'n, 694 A.2d 722, 726 (R.I. 1997). Given these limitations, where the Court "merely disagreed with the sanction decided upon by the [Department]," it may not reverse the agency's decision. Id. Since there was competent evidence in the record upon which the Department based the penalties imposed against Blue Cross, the Department's actions were not arbitrary, capricious, or erroneous as a matter of law, and do not constitute an abuse of discretion.
 The Refund Amount Is Not Disproportionate to the Statutory Violation
Both the federal constitution and the Rhode Island Constitution forbid the assessment and imposition of penalties that are disproportionate to the offense committed. See U.S. Const. Amend. VII, Article I and R.I. Const. Art. I, § 8.[5] Blue Cross alleges that the penalties imposed by the Department, which are in excess of $2 million, are "excessive, disproportionate, and can not [sic] be sustained." (Pl.'s Mem. of Law at 22.) The Department, however, maintains that the "magnitude of penalty was governed solely by the harm which was occasioned to the public as a result of the improper rating." (Def.'s Mem. of Law at 32.) The Rhode Island Supreme Court has held that:
 "[t]o determine whether a punishment is either disproportionate to the offense charged (in violation of our state constitution) or grossly disproportionate to the offense charged (in violation of the Eighth Amendment to the federal Constitution), a court should analyze: (1) the gravity of the offense along with the harshness of the penalty, and if applicable, (2) the sentences imposed upon similarly situated offenders in this and/or other jurisdictions." Retirement Bd. of Employees' Retirement System of State and City of Cranston v. Azar, 721 A.2d 872, 880 (R.I. 1998) (citations omitted).
In DiPrete v. Morsilli, 635 A.2d 1155, 1164 (R.I. 1994), a case involving violations by former Governor DiPrete of certain provisions of the state ethic laws, the Court held that the imposition of a $15,000 fine was proportional to the offense. The Court noted that Mr. DiPrete's violations of the ethics laws had resulted in a gain of some $250,000 for one of his business associates. Id. Moreover, the Court found unavailing the imposition of minimal fines in a similar case. Id.
In the case at bar, the Department required Blue Cross to refund $2,226,080.74 in Section VII(B) of its Second Decision. These refunds are to be paid to the 2,406 small employers who were overcharged by Blue Cross when it failed to convert to a four tier rating system as mandated by Title 27. (Second Decision at 7.) The evidence presented at the April 19, 2001 hearing indicated that from October 1, 2000 to March 31, 2001, the total amount of refunds due was $771,576.66. (Second Decision at 11.) In addition, on October 4, 2001, Blue Cross presented additional information for the premiums charged for the period from April 2001 to November 2001. This evidence indicates that the total refunds due for this latter period was $1,454,504.08. Id. Thus, the $2,226,080.76 refund order represents "the amounts by which contract holders were overcharged" and the penalty is "directly proportional to the offense." (Second Decision at 12.) The record evidences that the refunds ordered by the Department, though totaling over $2 million, are not excessive or disproportional to the violation committed by Blue Cross when the insurer opted not to immediately convert its rating methodology to a four-tier rating system as required by law.
 The Department Provided Proper Notice
Blue Cross claims that since the penalties imposed by the Department were made on improper notice they should be reversed. The insurer states that the December 8, 2000 Order to Show Cause and Notice of Hearing (Order to Show Cause) issued by the Department was insufficient to alert Blue Cross to the possibility of the Department's issuance of an order requiring it to issue refunds to small employers who were overcharged. Alternatively, Blue Cross contends that this document directed it to show cause why the Director of Department "should not issue an order to [Blue Cross] to cease and desist from violation of R.I. Gen. Laws § 27-50-1
et. seq." (Order to Show Cause at 1.)
The Department directs this Court's attention to the first sentence in the Order to Show Cause, which stated that the order was being issued pursuant to G.L. 1956 §§ 42-14-16 and 42-35-9. Id. General Laws §42-35-9 provides that "all parties shall be afforded an opportunity for hearing after reasonable notice." Moreover, subsection (a)(3) requires that "reference to the particular sections of statutes and rules involved" must be included in the notice. General Laws § 42-14-16
lists the different actions that may be taken by the Director to ensure compliance with Title 27. By specifically mentioning G.L. 1956 §42-14-16 in its Order to Show Cause, the Department gave Blue Cross adequate notice of the many and varied remedies that it could order to effectuate the insurer's compliance with the requirements of the law. Accordingly, substantial due process rights of Blue Cross were not herein prejudiced.
 First Amendment Rights
In conjunction with the administrative penalty and the order to issue refunds, the Department also requires Blue Cross to "submit to the Department for prior review and approval any written notice it intends to send to contract holders regarding the Decision, this Supplemental Decision and/or the refunds required to be made as a result thereof." (Second Decision at 25.) Blue Cross contends that such a condition constitutes an unlawful prior restraint on expression, which is accorded the protection of the First and Fourteenth Amendments. The Department responds that since the communication has yet to be submitted, the issue is not ripe for review. In the alternative, however, the Department asserts that the "speech" involved in this matter is commercial speech, which has always been subject to less protection than other constitutionally guaranteed expression. Consequently, resolution of the constitutionality of the Department's order requiring Blue Cross to submit for inspection and review any communication it intends to send to its insureds necessitates an examination of the rules governing prior restraints as well as those on commercial speech.
With respect to prior restraint, the Rhode Island Supreme Court has stated that "[a]ny system of prior restraints of expression bears a heavy presumption against its constitutional validity." State v. Berberian, 427 A.2d 1298, 1300 (R.I. 1981) (citations omitted). With respect to commercial speech, the United States Supreme Court has held that "[t]he protection available for particular commercial expression turns on the nature both of the expression and of the governmental interests served by its regulation." Central Hudson Gas Electric Corp. v. Public Serv. Comm'n of N.Y., 447 U.S. 557, 563, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341, 349 (1980). In Central Hudson Gas, the Court established a four prong test to determine whether the commercial speech at issue is protected by the First Amendment. Our Rhode Island Supreme Court summarized the analysis as follows: "(1) is the commercial speech protected by the First Amendment; that is, does it concern lawful activity, and is it not misleading? (2) is the asserted governmental interest substantial? (3) does the regulation directly advance the governmental interest asserted? and (4) is the regulation more extensive than is necessary to serve the governmental interest?" Rhode Island Liquor Stores Ass'n v. Evening Call Pub. Co., 497 A.2d 331, 334 (R.I. 1985).
A review of case law in this state, however, reveals that no Rhode Island Supreme Court opinion has dealt squarely with the interaction of prior restraints and commercial speech. "It should be noted from the outset that it is unclear whether the doctrine of `prior restraint' even applies to commercial speech." Berger v. Rhode Island Board of Governors for Higher Education, 832 F. Supp. 515, 517 (1st Cir. 1993) (citations omitted). However, "[b]efore a court examines whether a regulation is a prior restraint, it must examine the regulation and determine if the restriction violates the First Amendment regardless of the timing of the sanction." Id. at 518. (Citations omitted.) Thus, where a speech restriction "would violate the First Amendment regardless of when enforced, it is misleading to apply the prior restraint doctrine." Id.
The Department contends that the four part test established by the Court in Central Hudson, as applied to the facts in the case at bar, merits affirming the Department's Decision. With respect to the first prong, the Department maintains that its "review is narrowly designed to assure that the communication on this issue, which Blue Cross, had so much difficulty interpreting, is truthful." (Def.'s Mem. of Law at 37.) By communicating with its insured regarding the Department's Decision, Blue Cross further maintains that it would be conducting an activity that is lawful in the State of Rhode Island. The Department correctly notes that "there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than inform it." Central Hudson Gas Electric Corp. v. Public Serv. Comm'n of N.Y., 447 U.S. 557, 563, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341, 349 (1980). However, there is nothing on the record evidencing that the notice Blue Cross would send to its insured would be fraudulent or misleading.
As to the second prong, it is undisputed that the government interest is substantial. The Department explained that the "public has an acute interest in receiving truthful information concerning health insurance." (Def.'s Mem. of Law at 37.)
Finally, with respect to the two final prongs of the Central Hudson test, an instructive case is Berger v. Rhode Island Board of Governors for Higher Education, 832 F. Supp. 515, 516 (1st Cir. 1993). Berger involved an action seeking declaratory and injunctive relief against the Rhode Island Board of Governors for Higher Education for its regulation, which established a screening system for all school advertising. Id. The Court held that this regulation:
 "r[an] afoul of the final segment of the Central Hudson test which requires that the restriction be no more extensive than necessary to further the state's interest. Standard 7.2 mandates that any and all advertisements be approved by the Board regardless of their aim or purpose. As written, this restriction not only requires approval of advertisements seeking new students or hairdressing subjects, but also requires pre-publication approval of all advertising — even an ad for a clerical job at the School or one to sell old office equipment. Furthermore, the standards as a whole fail to give the reviewing authority any guidance as to what criteria are to be used in determining whether a submitted advertisement passes muster. The lack of reviewing criteria coupled with the unlimited breath of the Board's authority is clearly not narrowly tailored to the government's asserted interest." Id. at 518-19.
In the instant case, the Department contends that the third and fourth prongs of the Central Hudson test are met because its "order is narrowly tailored to address only an area with which Blue Cross has demonstrated problems — implementation and communication with its customers concerning the amendments of the Act . . . [and] [t]he Department's Decision is narrowly tailored to assure compliance with the agency's directives." Id. However, the Second Decision merely states that Blue Cross must submit any written notice it intends to send to its insureds regarding the Decision "for prior review and approval." (Second Decision at 25.) The Second Decision is narrowly tailored to the extent that the Department does not have unlimited authority over all communications between Blue Cross and its insureds. The Second Decision provides that only communications made by Blue Cross to its insureds regarding the Decision must be submitted to the Department. However, the Second Decision fails to provide Blue Cross with any standards by which to determine whether notice issued to insureds would meet with the Department's approval. Given the "lack of reviewing criteria" to provide Blue Cross with guidance, the Second Decision is not narrowly tailored to the government's interests. Thus, the order requiring Blue Cross to submit any notice regarding the Department's Decision, which it intends to send to its insureds, violates the protections afforded commercial speech under the First and Fourteenth Amendments of the United States Constitution.
 Conclusion
After review of the entire record, this Court finds that the Decision of the agency finding that the Director may order Blue Cross to issue refunds to small employers who were overcharged when Blue Cross failed to adopt a four-tier rating methodology as mandated by the Small Employer Health Insurance Availability Act is not in violation of constitutional or statutory provisions. In addition, this Court finds that the decision to impose administrative penalties did not implicate the right to a trial by jury, such that substantial due process rights of Blue Cross were not prejudiced. Moreover, the penalties imposed by the Department were not arbitrary, capricious, or clearly erroneous in view of the substantial evidence and do not represent an unwarranted exercise of discretion. However, this Court does find that the Department's order requiring Blue Cross to submit for review and approval any communication the insurer intended to send to its customers regarding the Decision violates constitutional and statutory provisions as it represents an unconstitutional infringement on speech, which is accorded the protection of the First and Fourteenth Amendments of the United States Constitution.
Accordingly, the decision of the Director of the Department of Business Regulation is affirmed in part and reversed in part.
Counsel shall submit an appropriate Order for entry.
[1] Blue Cross Blue Shield of Rhode Island v. McConaghy, C.A. No. 01-1570, April 26, 2001, Silverstein, J (Order). Although the Order was issued by this Court on April 26, 2001, the parties discovered during a hearing before the Department of Business Regulation on October 4, 2001 that the Order had not been signed or filed. The Court entered a nunc pro tunc order on October 5, 2001 to correct the error.
[2] Because this Court granted the stay, the Second Decision concerns two separate periods: (1) the contracts between Blue Cross and small employers between October 1, 2000 and March 31, 2001, which are rated on a two-tier basis from April 2001 to the present, and (2) the contracts between Blue Cross and small employers between April 1, 2001 to November 30, 2001.
[3] The instant case is also distinguishable from Interstate Navigation Company v. Division of Public Utilities and Carriers, et al., C.A. No. 99-3055, January 9, 2002, Silverstein J. In that matter, the Division sought to have its order prohibiting Interstate Navigation Company from entering the high-speed ferry transportation market affirmed. The Division based its order on the statutory authority provided in G.L. 1956 § 39-4-10, which provides:
 "[i]f, upon a hearing and investigation had under the provisions of this chapter, the division of public utilities and carriers shall find that any regulation, measurement, practice, act, or service of any public utility is unjust, unreasonable, insufficient, preferential, unjustly discriminatory . . . the division shall have power to substitute therefore such other regulations, measurements, practices, service, or acts, and to make such order respecting, and such changes in the regulations, measurements, practices, service or acts, as shall be just and reasonable, and the power to order refunds as provided for in 39-3-13.1."
This Court held that:
 "[w]hile it is within the ambit of the Division to issue an order that provides fair regulation of public utilities and carriers in the interest of the public and that promotes the availability of adequate, efficient and economical transportation services without `unfair or destructive competitive practices,' the Division must be able to refer to a practice or act committed by Interstate that triggers its actions under G.L. 1956 §§ 39-1-1(3)(b) and 39-4-10. In the instant case, however, the Division grounded its order on its perception of Interstate's intentions to enter the high-speed transportation market sometime in the future. In so doing, the Division acted outside the scope of the authority granted it under G.L. 1956 §§ 39-1-1(3)(b) and 39-4-10."
Thus, in Liguori v. Aetna Casualty and Surety Co., 384 A.2d 308,119 R.I. 875 (R.I. 1978), and Interstate Navigation Company v. Division of Public Utilities and Carriers, et al., C.A. No. 99-3055, January 9, 2002, Silverstein J., the agencies involved justified their actions as permissible according to express statutory authority. However, in both instances, the Court held that the statutory authority upon which the agencies relied failed to support their actions, i.e. the statutes did not empower the Commissioner to reinstate insurance coverage in Ligouri nor did it permit the Administrator to issue an order prohibiting Interstate Navigation Company from entering the high-speed ferry transportation market for three years.
[4] Section 15 of the R.I. Const. Art. I provides that "[t]he right of trial by jury shall remain inviolate. In civil cases the general assembly may fix the size of the petit jury at less than twelve but not less than six."
[5] The U.S. Const. Amend. VII, Article I provides "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." R.I. Const. Art. I, § 8 provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishment inflicted; and all punishments ought to be proportioned to the offense."